## JOHN FENA AND OTHERS v. PEPPERS FRUIT COMPANY.[1]

December 31, 1931.

No. 28,693.

*Thompson, Hessian & Fletcher* and *Carleton F. Boeke,* for appellant.

*E. L. Tong* and *Samuel Dolf,* for respondents.

[1]Reported in 239 N. W. 898.

138

HILTON, J.

Defendant appeals from an order denying its motion for a new trial.

Plaintiffs are copartners engaged in the wholesale fruit and vegetable business at Hibbing and Chisholm, Minnesota. Defendant (Peppers Fruit Company) is a corporation organized November 3, 1924, under the laws of the state of California, with an authorized capital stock of $250,000, represented by 2,500 shares of $100 each. It did not issue any stock, other than one qualifying share to each of five persons, and had no assets and did no business until July 1, 1926. Since that date it has been engaged in the selling and shipping of fruit in carload lots throughout the United States; the same business as had theretofore been conducted by one T. H. Peppers, as hereinafter stated. The action is for the recovery of damages because of a failure to make delivery to plaintiffs of two carloads of grapes in good condition at a specified time according to contract. The amount of the damages ($824.25) sustained by plaintiffs is not in dispute, and judgment therefor was ordered.

On September 18, 1925, and for a long time prior thereto, said T. H. Peppers was a sole trader operating in the state of California under the fictitious name of "Peppers Fruit Company"; this was well known to defendant. On that date, while so operating, an agent of Peppers, acting for him, at Chisholm, Minnesota, entered into a written contract whereby plaintiffs agreed to buy and "Peppers Fruit Company" agreed to sell and deliver to plaintiffs two carloads of grapes pursuant to certain terms and conditions set forth in the contract. In accordance with its terms, plaintiffs then paid "Peppers Fruit Company" $400 ($200 on each carload) the balance of the purchase price to be paid by the taking up of two drafts, with bills of lading attached, through the First National Bank at Chisholm.

One car arrived, and upon inspection by plaintiffs the grapes therein were found to be in a spoiled condition unsuitable for acceptance; they were not accepted. No delivery of the second car was ever made to plaintiffs. Plaintiffs notified "Peppers Fruit Company" of the condition of the grapes in the arrived car and of

the nondelivery of the second car and demanded return of the $400 advanced. It was not returned.

On June 26, 1926, Peppers made an offer to defendant, which is in part as follows:

"I hereby offer to sell to the Peppers Fruit Company the following assets:

"All of the packing houses, land leases, agreements, notes and contracts, railroad leases, stock in The Riverside Fruit Company, real estate and personal property owned by me and used in the business operated by me as T. H. Peppers doing business under the fictitious name of Peppers Fruit Company as shown on my books as of the first day of July, 1926, in exchange for 2,495 shares of stock of the Peppers Fruit Company.  *  *  *"

On July 1, 1926, the offer having been properly accepted, Peppers turned over to defendant the assets above referred to, and it delivered to him the 2,495 unissued shares of stock. Peppers thereupon became the president of defendant and has since carried on the business. The value of the assets delivered to defendant by Peppers was $350,000. Prior to such delivery defendant had no assets, and its stock was of no value.

Defendant's contention is that plaintiffs' cause of action, if any, was against T. H. Peppers individually and not against Peppers Fruit Company, a corporation, for the claimed reason that when it purchased the business of T. H. Peppers it did not assume his liabilities.

The case was tried to the court without a jury, and a finding of fact was made that defendant for a valuable consideration assumed all of the liabilities of T. H. Peppers to plaintiffs incurred by reason of the breach of the contract entered into. The necessary conclusion of law therefrom followed.

We have examined the various assignments of error and find them without merit.

The court at the beginning of the trial permitted an amendment of plaintiffs' complaint. After the trial ended the court granted plaintiffs' motion to reopen the case and to introduce additional evi-

dence relative to the amount of damages sustained, and at the same time refused defendant's application for a continuance. In so doing the court properly acted within the sound discretion vested in it.

Assignments of error relative to the court's rulings in striking out certain portions of depositions taken and permitting others to stand present no grounds for reversal.

The sole question remaining is whether the finding of the trial court that defendant assumed the liability of T. H. Peppers to plaintiffs was sustained by the evidence. We think it was.

By the transaction consummated July 1, 1926, defendant took over all of Peppers' "agreements * * * and contracts" (including his agreement and contract with plaintiffs). The trial court in its memorandum correctly stated:

"The contract was never fulfilled by either party according to its terms, and there is no claim or showing that it was mutually rescinded or abandoned. There was an existing liability on the part of one or the other of the contracting parties. If plaintiffs were in default the corporation could have sued; and the converse would seem quite plainly to be true—that if T. H. Peppers was in default plaintiffs could sue the corporation."

The circumstance that this particular agreement and contract turned out to be a liability rather than an asset for defendant is of no consequence. Defendant expressly assumed Peppers' liability to plaintiffs.

However, an assumption of such liability of necessity follows for another reason. Peppers turned over to defendant $350,000 worth of property; in consideration therefor he accepted 2,495 of the total 2,500 shares of defendant's capital stock. Defendant, under the same name as that previously used by Peppers in the fruit business, having possessed itself of the entire assets of that business, continued operating it at the same location. Peppers dominated it and, with some of the others who had been employed by him in his sole business, conducted it as before. No business whatever was done after July 1, 1926, by the old fictitious "Peppers Fruit Company." However, to all appearances there had been no change

whatever; everything seemed the same as before due to the juggling with the name "Peppers Fruit Company."

In Blumenthal v. Schneider, 186 Wis. 588, 203 N. W. 393, it was held (syllabus):

"Where a sole trader incorporates and the corporation takes over all the assets and continues the same business at the same place with substantially the same name and under substantially the same ownership equitably, there is a strong inference that it assumes the liabilities of the sole trader."

In Du Vivier & Co. v. Gallice (C. C. A.) 149 F. 118, it is stated (syllabus):

"A corporation organized by the members of a partnership, to whom all the stock is issued, to take over all of the property of the partnership, and continue its business at the same place is liable for the debts of the partnership, even though they are not expressly assumed."

To the same effect see Acorn Lbr. Co. v. Friedlander Box Co. Inc. 240 Ill. App. 425; Chicago S. & R. Corp. v. Sullivan, 246 Ill. App. 538. In Andres v. Morgan, 62 Ohio St. 236, 56 N. E. 875, 877, 78 A. S. R. 712, wherein a corporation was formed with the same name as that used by a preëxisting partnership and in which the partnership assets were turned over to the corporation, each partner receiving his proportionate share of its stock, and the business conducted the same as before and at the same place, the court, in holding that the corporation assumed the debts of the partnership, aptly stated [62 Ohio St. 243]: "The members of the partnership may be said to have simply put on a new coat."

We have examined the cases cited by defendant, most of which are readily distinguishable upon the facts. We find no reason for disturbing the conclusion reached by the trial court, and its order is affirmed.

Affirmed.