## RANGE ICE & FUEL COMPANY, INC. v. BARNSDALL OIL COMPANY AND ANOTHER.[1]

January 24, 1941.

No. 32,472.

*N. B. Arnold* and *Jay H. Hoag,* for appellant.
*Ell M. Roston,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Action for an accounting in which plaintiff appeals from an order denying its motion for a new trial after findings in favor of defendant Barnsdall Refining Corporation, hereinafter referred to as respondent.

It appears that prior to January 1, 1933, Jonas Johnson and William LeSage, copartners, were doing business as Northwest Petroleum Company operating gasoline filling stations at Virginia

[1]Reported in 296 N. W. 407.

and Hibbing. Thereafter, all their interest therein was transferred to corporations, acquired by them and named, successively, the Northwest Petroleum Company, Inc. and the Range Ice & Fuel Company, Inc. On April 1, 1933, the lease and contract here involved were made between the Northwest Petroleum Company, Inc. (Johnson and LeSage) first parties, and the Zenith Petroleum Company, second party, lessee, whereby arrangements were made to discharge an existing indebtedness owed to Zenith and others. Rentals were provided as consideration for a five-year lease running to Zenith as follows: Two cents per gallon on regular and high-test gas, one cent per gallon on low-test, and 15 cents per gallon on nonbulk sales of oil. These rentals were to be credited by Zenith in payment of the indebtedness in accordance with the provisions of the contract.

Financial difficulties beset Zenith. Recceivership, reorganization, and bankruptcy proceedings followed one another within the period of March, 1934, to March, 1935. While attempts were being made to reorganize Zenith, the first parties became dissatisfied with the way in which the trustees were operating the stations, particularly with respect to upkeep, sales, and personnel. On December 1, 1934, request was made to the federal district court by the first parties for leave to cancel the lease and contract. Objection was made by a trustee of Zenith upon the ground that cancellation would involve a loss of outlets for the distribution and sale of Barnsdall petroleum products, of which Zenith was the distributor. The federal court, though refusing leave to cancel, urged negotiations between the trustee and the first parties looking toward more satisfactory business arrangements. The first parties desired to operate the stations again.

Appellant contends that at the meeting on December 1 it was agreed that the first parties should resume operation at the regular operator's margin together with a continuation of the rental provisions under the old arrangement. Allegedly, respondent as successor to Zenith through purchase at the bankruptcy sale, later agreed to continue this new status. Respondent contends, and

the court found, that the rental provisions of the lease and contract were abandoned at that time. Whatever the agreement, the first parties retook possession, LeSage at Hibbing, Johnson at Virginia, and resumed operations under a quantity delivery agreement (Q. D. A.) calling for margins of three and one-half cents per gallon on high-test gas and regular grades, and one and one-half cents on low-test. Thereafter, they sold out to each other, and Johnson assumed complete control at Virginia, which continued until June, 1937, when all business relations between appellant and respondent ceased.

In this action the appellant in substance asserts that had proper credits for rentals and return of equipment been given from December 1, 1934, the amounts claimed by respondent on the Zenith merchandise and equipment accounts in this and the companion cases, Barnsdall Refining Corp. v. Range I. & F. Co. Inc. 209 Minn. 266, 296 N. W. 410, and *Id.* 209 Minn. 267, 296 N. W. 411 (Nos. 32,470 and 32,471), would have been paid and overpaid. Having found that the rentals accruing under the old lease were abandoned by agreement on December 1, 1934, the trial court found that the appellant was indebted on that date to respondent as successor to Zenith for $1,340.88, for which judgment was ordered. It also found that appellant was indebted in the amount of $1,386.19 for merchandise furnished by respondent to appellant from December 1, 1934, to June, 1937, and that $422.69 was due for delinquencies in connection with certain equipment accounts on which respondent held contracts; that these latter items were the subjects in action in the companion cases Nos. 32,470 and 32,471, and separate findings of fact and conclusions of law for these amounts would be made therein. Such findings were made in those cases.

At the outset, appellant can assert no error in the procedure by which these cases were disposed of below. The instant case as one for an accounting brought by appellant was heard first, though not begun until after respondent had begun its actions in Nos. 32,470 and 32,471, for the reason that decision herein would determine substantially all issues in all cases. However, the rec-

ord discloses that it was understood by the parties and the trial court that separate findings and conclusions would be made for each case. This disposition was ordered so that respondent's right to proceed against security posted by appellant in those cases would not be jeopardized. It was agreed to by appellant.

In the main, this appeal presents only several disputed questions of fact in which appellant disagrees with the trial court. Since we have no authority to make or amend findings of fact where the evidence is in conflict, 1 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 434; Dwinnell v. Minneapolis F. & M. Mut. Ins. Co. 97 Minn. 340, 348, 106 N. W. 312; Lawton v. Fiske, 129 Minn. 380, 152 N. W. 774; In re Blue Earth County Co-op. Co. 139 Minn. 231, 166 N. W. 178, our province on this appeal is to determine whether the findings of fact as made below are manifestly and palpably contrary to the evidence. 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 411; Sommers v. City of St. Paul, 183 Minn. 545, 237 N. W. 427; Markert v. Magee, 200 Minn. 292, 274 N. W. 174.

Essential to decide is whether the finding that on December 1, 1934, the rental provisions of the lease and contract were abandoned by agreement has adequate evidentiary support. If it has, then appellant can claim no rentals allegedly accruing after December 1, 1934, to offset against the several accounts on which respondent demands payment. While the evidence on the point is disputed and conflicting, we think that on the whole it definitely supports the finding.

For respondent, the trustees in bankruptcy and others as witnesses stated that it was agreed by the parties that the rental provisions of the lease and contract were "out" and Q. D. A. contracts substituted. That evidence to the contrary should have been believed, we cannot say. The evidence supports the view that the primary concern of all those attending the December 1 meeting was to reëstablish Johnson and LeSage as operators without loss of outlets to Zenith. The outright cancellation of the lease as requested of the Federal district court would have lost the Hibbing and Virginia outlets to Zenith and Barnsdall. It

appears to us that Johnson and LeSage were so dissatisfied with the operation of the stations by the trustees of Zenith that they desired a change in the working arrangement. Further, it appears from respondent's evidence, which the court believed, that a combined Q. D. A. status and rental arrangement, as claimed by appellant, would have been financially detrimental to Zenith at a time when it was already in reorganization. Seemingly inconsistent documentary evidence (a petition and appraisal) executed subsequent to December 1, 1934, wherein unqualified reference was made to the lease and contract, may be reconciled to the view that the parties in substance contemplated only a modification of their agreement by elimination of the Zenith liability to pay rent. Preservation of these two outlets for the distribution of Barnsdall products doubtless was intended by the trustees negotiating for Zenith. In any event, the subsequent conduct of Johnson, as indicated by his use of the premises for the ice and fuel business, together with his failure to demand the rentals in question from respondent's officials during the entire period, weighs heavily against the contention that the lease and contract continued after December 1, 1934.

Appellant can make no complaint because the federal district court apparently never approved the transaction in question. By accepting a regular operator's contract and acquiescing in the suspension of the rental provisions in order to regain possession of the stations, appellant waived any standing in this court to challenge the validity of the new arrangements because not approved.

We are not impressed by the argument that appellant never assumed or agreed to pay the indebtedness to Zenith originally incurred by Johnson and LeSage. To a nonfunctioning corporation acquired by the copartners, all assets of the copartnership were conveyed prior to the execution of the lease and contract. Under the name of Northwest Petroleum Company, Inc., the copartners on April 1, 1933, in corporate and individual capacities, executed the lease and contract here involved. Therein liability

to Zenith in excess of $2,600 was admitted. Any formal declarations of policy which appellant may have made in its attempt to disclaim liability cannot prevail in face of this contractual admission. Furthermore, under Fena v. Peppers Fruit Co. 185 Minn. 137, 239 N. W. 898, the expedient of adopting a corporate business structure, having the same name, properties, and purposes as a former partnership or individual, will not be effective to purge the organizers in their corporate capacity of indebtedness previously incurred in some other capacity. This doctrine applies here although the corporation was not organized but acquired by purchase.

There can be no doubt that the evidence sustains the finding that $1,340.88 was due the trustees of Zenith on December 1, 1934, to which respondent, as successor, is entitled. In fact this amount represents exactly twice the amount which one buyer had offered, on behalf of LeSage, who owed one-half of the indebtedness, to pay the trustees prior to December 1, 1934, to obtain from them a release of the Hibbing station. Though this offer was never accepted, yet the amount tendered is evidence from which the trial court could conclude that the entire indebtedness from both Johnson and LeSage was at least double this amount.

It is to be regretted that our consideration of the merits of this case has been hampered by the rather unwarranted departures from the record before us by the parties in their respective briefs. However, from a consideration of the entire record in this and the companion cases (Nos. 32,470 and 32,471) we cannot but conclude that all findings of fact have more than adequate evidentiary support. Therefore the order appealed from is affirmed.

Order affirmed.