TELEPHONE ASSOCIATES, INC., et al., Appellants,

v.

ST. LOUIS COUNTY BOARD, et al., Respondents.

No. C6–83–1295.

Court of Appeals of Minnesota.

June 19, 1984.

Review Granted Sept. 12, 1984.

Harry L. Munger, MacDonald, Munger & Downs, Duluth, for appellants.

Clay W. Odden, Asst. County Atty., Duluth, for respondents.

Heard, considered and decided by POPOVICH, C.J., and FORSBERG and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

This is an appeal from denial of appellant's request for a permanent injunction. The trial court determined the St. Louis County competitive bidding procedures had been properly complied with and refused to enjoin the County's award of a telephone system contract to a third party. We find the competitive bidding procedures were not properly complied with and the awarded bid was improperly modified, not responsive and therefore invalid and should have been rejected. Reversed and remanded.

## FACTS

In January, 1982 the St. Louis County Board determined it would be necessary to seek bids for the installation of a telephone system in a new State Office Building in Duluth, Minnesota. The county purchasing agent prepared a Request for Proposals (bid request), which was approved by the County Board and advertised in the local newspaper.

Several bids were submitted to the County, including a proposal by appellant, Telephone Associates, Inc. After the bids were opened, meetings were held by the appointed bid evaluator, members of a consulting firm hired by the County and other interested parties to determine which bid proposal provided the best value to the County. During the course of those meetings, modifications were made to a bid offer by Norstan Communications Systems, Inc.

On May 3, 1982, as a result of the meetings, the purchasing agent presented a resolution to the County Board recommending the telephone system contract be awarded to Norstan Communications Systems, Inc. A summary of the evaluation process was attached to the resolution although the full evaluation procedures and documents were not presented to the Board.

Appellant challenged the proposed award, claiming the process following the bid-opening was improper. Nonetheless, the County Board awarded the contract to Norstan and the appellant sought injunc-

tive relief, requesting that it be awarded the contract. A motion for a temporary restraining order, later changed by agreement of the parties to a motion for a temporary injunction, and a formal complaint requesting a permanent injunction were filed with the district court. After hearing two days of testimony on appellant's temporary injunction motion, the trial court denied the motion by its order of June 16, 1982, which indicated the County Board had followed the appropriate competitive bidding procedures and appellant had not demonstrated irreparable harm warranting injunctive relief.

On August 19, 1983, pursuant to the parties' stipulation that no further testimony be offered, the trial court entered its final order denying appellant's request for a permanent injunction for the same reasons it had previously expressed for denying the temporary injunction. This appeal followed.

### ISSUES

1. Whether it was proper for the County Board to modify Norstan's bid, after it was opened, to bring it in conformity with the requirements of the bid request.

2. Whether the trial court's denial of injunctive relief was proper.

### ANALYSIS

#### I.

The County's Request for Proposals stated the bid contract would be awarded "to the Vendor providing best value to the County." One factor to be used in determining best value, and which was assigned a weight of 50%, was the "net present value cost calculations of the telecommunications equipment/services proposed, over a five year period." An element used in determining "net present value" was the proposed monthly maintenance cost submitted by each bidder. Norstan Communications, Inc. did not submit monthly maintenance costs including both labor and materials, but responded to the request by listing two options: (1) an annual charge

not taking labor charges into consideration, and (2) a time and materials option, whereby charges would be "portal to portal at existing rates per hour, plus the materials cost."

Proposals submitted by appellant and other bidders did contain the requested monthly maintenance information. Appellant submitted an estimate of approximately $1,005.00 per month and a third bidder, Continental Telephone, submitted a monthly maintenance estimate of approximately $1,900.00. When the bids were opened and it was discovered that Norstan had not submitted a total monthly maintenance charge, the County Board simply added appellant's and Continental's estimates together and divided the total by two. That average cost was then inserted in Norstan's bid in the section requesting monthly maintenance costs.

 Appellant argues this action by the County was unfair and prejudicial and that Norstan's bid should have been rejected for failure to comply with the bid request. The law governing changes in bids is expressed in *Coller v. City of St. Paul*, 223 Minn. 376, 26 N.W.2d 835 (1947), which states: "a bid must conform substantially to the advertised plans and specifications, and that where there is a substantial variance between the bid and the plans and specifications it is the plain duty of the public authority to reject the bid." *Id.* at 385, 26 N.W.2d at 840. "The test of whether a variance is material is whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders." *Duffy v. Village of Princeton*, 240 Minn. 9, 12, 60 N.W.2d 27, 29 (1953).

 The award of a municipal contract is an "administrative [act] of discretion which will be enjoined only if done illegally, arbitrarily, capriciously, or unreasonably." *Bud Johnson Const. Co., Inc. v. Metropolitan Transit Commission*, 272 N.W.2d 31, 33 (Minn.1978). On appeal, the burden is on the appellant "to show that there is no substantial evidence reasonably tending to sustain the trial court's findings." *Nielsen*

*v. City of St. Paul,* 252 Minn. 12, 29, 88 N.W.2d 853, 864 (1958).

■ The County was wrong in changing Norstan's bid. By inserting an estimated monthly maintenance cost in Norstan's bid where none had been supplied, the County allowed Norstan a substantial advantage not enjoyed by the other bidders who had honestly attempted to estimate a maintenance cost. Had the County properly rejected Norstan's bid, the evidence indicates that appellant's bid would have been the lowest in the net present value category.

In addition, appellant claims that other errors were made in the bidding process after the bids were opened. In view of our decision that the County should have rejected Norstan's bid, we need not consider these additional claims.

## II.

■ This appeal was taken from the final order of the trial court denying appellant's request for a permanent injunction. During the time lapse between denial of the temporary and permanent injunctions, the County proceeded with installation of the Norstan system. Both the County and Norstan were parties to the litigation and both knew the final ruling was pending. By installing the system prior to conclusion of the litigation, these parties proceeded at their own risk.

This conclusion is supported by *City of St. Paul v. Dual Parking Meter Co.,* 229 Minn. 217, 39 N.W.2d 174 (1949). There, Dual was one of three contractors bidding for a contract for sale and installation of the City's parking meters. The City selected Dual's bid, but prior to execution of the written contract, a suit was commenced to annul the award as a violation of the City's competitive bidding requirements. The district court decided the contract was validly awarded and dismissed the action. The City and Dual then executed a written agreement and began performance. The day after this agreement was signed, an appeal of the district court's decision was filed. On appeal, the trial court was reversed and was ordered to enter a new

judgment nullifying the contract awarded and enjoining performance of the contract. *Coller v. City of St. Paul,* 223 Minn. 376, 390, 26 N.W.2d 835, 843 (1947). The *Coller* court had not been informed the meters had been installed and were in operation.

Subsequent to the court's decision in *Coller,* a dispute arose between the City and Dual over enforcement of the performed, albeit invalid, contract. The specific issue was whether Dual was entitled to compensation in quasi-contract to the extent of the benefits received by the City from the use of the meters. In resolving the issue, the court said:

> It might be argued by both parties that, inasmuch as the contractor obtained a judgment in district court dismissing the action and adjudging the contract validly awarded, the parties were justified in entering into the contract of August 20, 1946. With this position we shall not disagree. However, when Coller appealed to this court on August 21, 1946, both the city and the contractor, who were defendants in that action, took their own chances that the district court judgment might be reversed, that the award might be nullified, and that they might be restrained from entering into and performing the contract, which is exactly what happened. It would appear that under those circumstances it was inequitable conduct on the part of both parties to proceed with or attempt to permit the performance of the contract by installing the meters prior to the time the Coller appeal was determined by this court.

*City of St. Paul v. Dual Parking Meter Co.,* 229 Minn. at 226–27, 39 N.W.2d at 179.

Although the posture of this matter is different than *Dual Parking Meter Co.,* the same principles apply. The County and Norstan were parties to pending litigation. Both proceeded at their own risk by installing the system prior to conclusion of the litigation and now must bear that risk.

## DECISION

The County's failure to follow the competitive bidding requirement rendered the

contract award invalid. The case is reversed and remanded to the district court for such relief as might be proper and appropriate.

FORSBERG, Judge, dissenting.

I respectfully dissent. As the majority notes, this appeal was taken from an order denying appellant's request for a permanent injunction. That order was entered on August 19, 1983—more than a full year after the appellant's request for a temporary injunction was denied. Due to the delay between the initial denial of temporary relief and the final order, the telephone system had already been installed by the county. The appellant did not appeal from the initial order denying its request for a temporary injunction, although that order would have been appealable. *See, e.g., Thompson v. Barnes*, 294 Minn. 528, 200 N.W.2d 921 (1972); *Chicago Avenue Floral Co., Inc. v. Traxler*, 284 Minn. 28, 169 N.W.2d 220 (1969). The appellant thus in effect "sat on his rights," by not taking timely and appropriate action.

The facts of *Coller v. City of St. Paul,* cited by the majority, are clearly distinguishable from those presently before this court, since in *Coller* an action was brought by a successful bidder under a theory of quasi-contract, whereas in the present action the unsuccessful bidder has sued for injunctive relief. In *Coller*, the court held that the successful bidder was not entitled to quasi-contractual relief because its conduct in proceeding with the contract was as inequitable as that of the party from whom it sought to recover. In contrast, in the present case, the question is merely whether the unsuccessful bidder should be entitled to relief where an entire telephone system has been installed.

Where an injunction is requested, a court must consider and balance the relative harm to the parties, *Northern States Power Co. v. City of Saint Paul*, 256 Minn.

489, 496, 99 N.W.2d 207, 212 (1959) and the inconvenience to the public and other interested parties. *St. Paul Book & Stationery Co. v. St. Paul Gaslight Co.,* 130 Minn. 71, 153 N.W. 262 (1915); *Minnesota Bearing Co. v. White Motor Corp.,* 470 F.2d 1323, 1326 (8th Cir.1973). A court should not require the undoing of an act where the expense and inconvenience of undoing the work far outweighs any damage suffered. *Dynes v. Town of Kilkenny*, 153 Minn. 11, 14, 189 N.W. 439, 441 (1922). In the present situation, had the trial court granted appellant's request for a permanent injunction, presumably the telephone system would have had to have been removed and the bidding process begun anew. Recognizing this potential for harm, expense and inconvenience to the county, Norstan, and especially to the residents of the county,[1] I would affirm the trial court's decision to deny the injunction.

The majority remands to the district court "for such relief as might be proper and appropriate," but does not indicate what type of relief would be appropriate in this instance. The general rule is that an unsuccessful bidder is not entitled to damages:

> While it is true that an unsuccessful bidder has standing to maintain a proceeding to review the award of a contract in violation of a statute requiring that the contract go to the lowest responsible bidder, this procedure is sanctioned merely to ensure enforcement of the statute.

10 McQuillan, *The Law of Municipal Corporations,* § 29.83 at 426 (3d Ed.1981) (footnote omitted).

> Since the power of letting public contracts must be exercised for the benefit of the public and not of the bidder, it is generally held that an award of a contract to one other than the lowest bidder does not entitle the lowest bidder to a recovery of damages from the municipality, nor to an action to recover profits

---

**1.** In *Nielson v. City of St. Paul*, 252 Minn. 12, 19, 88 N.W.2d 853, 858–859 (1958), the court noted that "provisions ... regulating competitive bidding were designed for the benefit of the city

and to protect the public, to make certain, as far as possible, that the taxpayers would be assured of the best bargain for the least money."

which he might have made had his bid been accepted ... The rationale underlying this rule is that the authority for letting public contracts is derived for the public benefit and is not intended as a direct benefit to the contractor. Therefore, the misfeasance of public officials in failing to award the contract to the lowest bidder should not be a source of vexation to the public by first requiring unjustified additional expenditure of public funds on the award contract, and then allowing recovery for lost profits to the aggrieved low bidder.

*Id.,* § 29.86 at 431. (Footnotes omitted.)

In addition, there is insufficient evidence to establish that the appellant would have been awarded the contract in this instance even if the appropriate competitive bidding procedures had been complied with. Special laws governing competitive bidding in St. Louis County (Laws of 1967, Ch. 563) and general competitive bidding statutes (Minn.Stat. § 375.21 *et seq.*) indicate that a bid which offers lowest cost need not be accepted if it does not provide the best value to the county. *See Ottertail Power Company v. Village of Elbow Lake,* 234 Minn. 419, 425, 49 N.W.2d 197, 201 (1951). Laws of 1967, Ch. 563, Section 1 states that "[a]ll bids may be rejected and new bids solicited if the public interest shall be served thereby ...." Because the county would thus not be required to accept appellant's bid, even if it were the lowest in cost, appellant had no vested or contractual right to receive the contract. Recognition of this fact requires a conclusion that appellant should not be allowed to recover anticipated profits as damages. *Owen of Georgia, Inc. v. Shelby County,* 648 F.2d 1084 (6th Cir.1981).

The appellant may, however, have a valid claim for damages under a theory of an implied promise by the county to consider all bids in good faith. Although the court in *Universal By-Products, Inc. v. City of Modesto,* 43 Cal.App.3d 145, 152, 117 Cal. Rptr. 525, 529 (1974) held that "[s]uch a promise would be contrary to a well established rule which allows a public body

where it has expressly reserved the right to reject all bids, to do so for any reason and at any time before it accepts a bid," at least one court has awarded damages to an unsuccessful bidder upon such a theory:

> In its solicitation of bids ... Shelby County clearly promised to award the contract to the lowest financially responsible bidder *if* it awarded the contract at all. Each prospective bidder could justifiably expect that his proposal would receive fair consideration consistent with this promise. We believe that the Tennessee courts would find that Owen's reasonable and detrimental reliance upon this promise entitles it to damages under the theory of promissory estoppel.

\* \* \* \* \* \*

> Owen may recover in promissory estoppel those damages it sustained by reason of its justifiable reliance upon the County's promise—in other words, the expenses it incurred in its unsuccessful participation in the competitive bidding process as well as the costs incurred in its successful attempt to have the award to Pidgeon-Thomas rescinded as having been made in violation of the statute.

*Owen of Georgia, Inc. v. Shelby County,* 648 F.2d at 1095–1096.

Thus, although I would affirm the trial court's decision to deny injunctive relief without requiring this case to be remanded, under the reasoning of the *Owen* decision, a finding of damages under a theory of promissory estoppel would perhaps be appropriate upon remand.