HEHL, Respondent, vs. CHIPPEWA & RED CEDAR VALLEY CARPENTERS' DISTRICT COUNCIL, U. B. of C. & J. of A., and others, Appellants.

*June 3—June 26, 1958.*

630

For the appellants there was a brief by *Padway, Goldberg & Previant* of Milwaukee, and by *Ray E. Wachs* of

Eau Claire, and oral argument by *David Leo Uelmen* of Milwaukee.

For the respondent there was a brief by *William H. Frawley,* and oral argument by *Edwin Larkin,* both of Eau Claire.

FAIRCHILD, J. The conclusion of the circuit court that defendants' conduct was unlawful was based upon its finding that they picketed for the purpose of coercing plaintiff to employ members of the union and to injure him because of his refusal to interfere with the rights of his employees with respect to joining a union.

Coercion or inducement of an employer to those ends would be an unfair labor practice under sec. 111.06 (2) (b), Stats., and could be enjoined by the circuit court if the law of Wisconsin alone were applicable.

*Vogt, Inc., v. International Brotherhood* (1956), 270 Wis. 315, 321b, 71 N. W. (2d) 359, 74 N. W. (2d) 749; affirmed, *Teamsters Union v. Vogt, Inc.* (1957), 354 U. S. 284, 77 Sup. Ct. 1166, 1 L. Ed. (2d) 1347.

Conduct of a union for the same purpose and affecting interstate commerce would be an unfair labor practice under sec. 8 (b) (2) of the National Labor Relations Act, 61 Stats. at L., p. 141, 29 USCA, sec. 158 (b) (2), p. 258. *Wisconsin E. R. Board v. Chauffeurs, etc., Local 200* (1954), 267 Wis. 356, 66 N. W. (2d) 318. A state court or agency could prevent mass picketing, violence, or overt threats of violence. *United Automobile Workers v. Wisconsin E. R. Board* (1956), 351 U. S. 266, 274, 76 Sup. Ct. 794, 100 L. Ed. 1162; *Youngdahl v. Rainfair, Inc.* (1957), 355 U. S. 131, 78 Sup. Ct. 206, 2 L. Ed. (2d) 151. Otherwise (as is true here) preventive procedure can be sought only by application to the National Labor Relations Board. State agencies and courts are without jurisdiction in the matter because congress is considered to have so pro-

vided. *Guss v. Utah L. R. Board* (1957), 353 U. S. 1, 77 Sup. Ct. 598, 1 L. Ed. (2d) 601; *Amalgamated Meat Cutters, etc., v. Fairlawn Meats* (1957), 353 U. S. 20, 77 Sup. Ct. 604, 1 L. Ed. (2d) 613; *San Diego Building Trades Council v. Garmon* (1957), 353 U. S. 26, 77 Sup. Ct. 607, 1 L. Ed. (2d) 618.

This court said recently, with reference to the *Guss Case*: "It follows that where it is appropriately shown to the Wisconsin Employment Relations Board that the enterprise in which a petition to that board alleges that an unfair labor practice has been committed and seeks relief therefrom, involves a substantial amount of interstate commerce—more than *de minimis*—the state board must decline jurisdiction." *Wisconsin E. R. Board v. Lucas* (1958), 3 Wis. (2d) 464, 469, 89 N. W. (2d) 300.

The *Fairlawn* and *Garmon Cases* reached the same result with respect to injunctive relief by a state court.

Defendants claim that their conduct, if so motivated as to be an unfair labor practice, "affects [interstate] commerce." Plaintiff asserts that his business is local and that defendants' conduct does not affect interstate commerce, and further, that even if it does, the unwillingness of the national board to hear his case deprives him of due process.

1. *Is interstate commerce affected by the defendants' conduct?* "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." The term "labor dispute" is not limited to those who "stand in the proximate relation of employer and employee" and the term "commerce" includes commerce among the states. 29 USCA, sec. 152 (7), (9), p. 202.

Plaintiff buys and receives materials which originate outside the state and move into it. Even as to the materials which physically reach the state before he buys them, his

desire to buy and ability to use them helps create the market which causes the materials to move into the state. Continued picketing would affect his desire and ability to buy. The picketing also affects suppliers and other contractors, delivering to and working at the same site. They also help to provide a market for the materials they need. It seems clear that the picketing has some effect on interstate commerce, and the only other question is whether that effect is so slight as to be disregarded.

As to amount, the United States supreme court has said: "Examining the act in the light of its purpose and of the circumstances in which it must be applied we can perceive no basis for inferring any intention of congress to make the operation of the act depend on any particular volume of commerce affected more than that to which courts would apply the maxim *de minimis.*" *National L. R. Board v. Fainblatt* (1939), 306 U. S. 601, 607, 59 Sup. Ct. 668, 83 L. Ed. 1014.

What is *de minimis* in this situation? *"De minimis* in the law has always been taken to mean trifles—matters of a few dollars or less." *National L. R. Board v. Suburban Lumber Co.* (3d Cir. 1941), 121 Fed. (2d) 829, 832; certiorari denied (1941), 314 U. S. 693, 62 Sup. Ct. 364, 86 L. Ed. 554.

The circuit court made a finding that plaintiff's business does not affect interstate commerce. The testimony indicating the smallest volume of out-of-state purchases is that they amount to about $50,000, including the lumber which plaintiff purchases after it has reached Wisconsin.

Counsel have not cited any decision involving a local contractor who uses $50,000 worth, or less, per year, of materials originating outside his state and who ships no goods and performs no service outside his state. Federal courts of appeal have, however, upheld the exercise of jurisdiction by the national board, stating that the volume of

materials moving into the state was not small enough to be *de minimis*. In two of these cases, certiorari has been denied by the United States supreme court.

*National L. R. Board v. El Dorado Water Co.* (8th Cir. 1952), 195 Fed. (2d) 950, involved a water company, operating within Arkansas. Although there were other facts under which the claim was made that the water company's business would affect commerce, the court passed over all grounds except the amount of out-of-state supplies purchased. The court said at page 954:

"Here materials and supplies amounting to approximately $65,000 were shipped into Arkansas from outstate for use by respondent in the operation of its plant to supply local users of water. And the present question is whether the stoppage of those imports occasioned by labor difficulties in respondent's plant would have such a bearing on commerce as to bring respondent within the act."

The court in the *El Dorado Case* relied on *National L. R. Board v. Denver Bldg. Council* (1951), 341 U. S. 675, 71 Sup. Ct. 943, 95 L. Ed. 1284, where, although there were other circumstances indicating an effect upon interstate commerce, the supreme court said that the national board " 'recognized that Gould & Preisner's annual purchase of over $55,000 of such [out-of-state] materials was not negligible.' " The court held that the $65,000 volume was a sufficient basis for jurisdiction of the national board even though the materials "were for use in the maintenance and improvement of the plant which is used for local purposes."

In *National L. R. Board v. Stoller* (9th Cir. 1953), 207 Fed. (2d) 305, the national board had asserted jurisdiction over a laundry and dry-cleaning establishment located in the state of Washington on a federal atomic energy reservation. In one year the proprietor purchased supplies amounting to $24,000, of which about half were shipped in

from outside of Washington. The court upheld the board's exercise of jurisdiction, saying, page 307, "The commerce affected—approximately $12,000 a year—was not so insignificant as to come within the rule *de minimis non curat lex.*" Certiorari was denied (1954), 347 U. S. 919, 74 Sup. Ct. 517, 98 L. Ed. 1074.

In *National L. R. Board v. Daboll* (9th Cir. 1954), 216 Fed. (2d) 143, the national board asserted jurisdiction over a plastering contractor who worked in both California and Nevada. The court upheld the jurisdiction of the national board and said, among other things, page 144, "Daboll imported materials valued at approximately $77,000 into Nevada during 1952. Respondents contend that the statutory grant of jurisdiction over unfair labor practices 'affecting commerce' is subject to the rule of *de minimis,* and that imports worth $77,000 fall within that rule. We do not agree." Certiorari was denied (1955), 348 U. S. 917, 75 Sup. Ct. 300, 99 L. Ed. 719.

Defendants' picketing caused an interruption in the work of several suppliers and contractors working at the construction site, each with a volume of purchases of materials originating out of state comparable to the volume purchased by plaintiff. This fact is also to be considered in determining whether defendants' conduct affected interstate commerce. The supreme court of Kansas has held that where picketing of a construction site is directed at a contractor whose business is entirely local and does not involve interstate commerce, a state court, in deciding whether it has jurisdiction, must consider the effect of the picketing upon other contractors working at the same site and the volume of their interstate business. *Asphalt Paving v. International Brotherhood* (1957), 181 Kan. 775, 317 Pac. (2d) 349.

Although none of the cases cited is "on all fours," we cannot conscientiously hold that the volume of interstate

commerce flowing to plaintiff and to the others affected by the picketing is so slight that the picketing does not "affect" interstate commerce, nor that regulation of the picketing is beyond the power of congress.

2. *Due process.* Plaintiff seems to contend that because the national board indicates by the jurisdictional standards it has promulgated that it would refuse to entertain any charge of unfair labor practice plaintiff might file, he has a right to a remedy in the courts of the state. We are bound, however, to respect and apply the principle of the *Guss Case* and its companion cases that the national board has exclusive jurisdiction of preventive procedure. We must assume that the national board will do its duty (although its announcements of jurisdictional policy indicate that it would probably refuse to accept jurisdiction in this case), or that a court will compel the board to do its duty in a proper case to which the board is a party. We can scarcely be said to be violating the constitution by refusing to take jurisdiction of a case in which the United States supreme court has said a state has no jurisdiction.

The argument that the principle of the *Guss Case* deprived complainants of rights without due process was apparently made to the United States supreme court in a motion for rehearing in the *Fairlawn Case,* and apparently rejected when the motion was denied. (353 U. S. 948, 77 Sup. Ct. 822, 1 L. Ed. (2d) 857.) The same argument has been rejected by the supreme court of Texas. *Ex parte Twedell* (Tex. 1958), 309 S. W. (2d) 834.

3. *Action for damages.* It has not been argued that plaintiff pleaded or established a cause of action for damages. His complaint asked only for an injunction. The national act has not ousted state courts of jurisdiction over actions for damages for tort and breach of contract where the cause of action arises from conduct which constitutes an unfair labor practice affecting interstate commerce. *United Con-*

*struction Workers v. Laburnum Corp.* (1954), 347 U. S. 656, 74 Sup. Ct. 833, 98 L. Ed. 1025; *San Diego Building Trades Council v. Garmon, supra; International Union v. Russell* (1958), 356 U. S. 634, 78 Sup. Ct. 932, 2 L. Ed. (2d) 1030; *International Asso. of Machinists v. Gonzales* (1958), 356 U. S. 617, 78 Sup. Ct. 923, 2 L. Ed. (2d) 1018.

4. *History of jurisdictional policy.* Our attention has been called to a decision of the Wisconsin Employment Relations Board, rendered June 2, 1958, dismissing the complaint of Heiser Ready Mix Company against International Teamsters Local No. 446, and others, decision No. 4780. In a memorandum accompanying the decision the board described in interesting detail the policy it has followed since 1938 with respect to complaints involving situations which might also fall within the jurisdiction of the national board. Initially the state board would exercise jurisdiction except where it appeared to the board that such exercise would result in conflict with action by the national board. It refers to this policy as a doctrine of concurrent jurisdiction. The state board was compelled to recede from time to time as a result of decisions of the United States supreme court until it reached the position in the *Heiser* matter which the board feels it is compelled to assume by the *Guss Case.*

The National Act proscribes certain practices by employers, employees, and unions if they affect interstate commerce. It excludes the states from taking action to prevent those practices. It has established the national board with exclusive jurisdiction to take preventive action. The board, however, declines to make its remedy available to all persons who might properly seek to prevent the proscribed practices. In many instances the test is the size of the business involved. We do not deem this a desirable situation and it is particularly without justification where the line between those to whom a remedy is available and those to whom it is not is so

drawn that employers and employees in smaller businesses are excluded from the remedy.

It should be pointed out that where a practicable remedy is not available, it may be either employers or employees whose interests suffer. In the instant case, as well as in the *Fairlawn* and *Garmon Cases,* it is an employer who is denied access to a state remedy to prevent alleged coercion. In the *Guss Case* (and in our *Lucas Case,* if the board finds an effect upon interstate commerce upon remand) employees were denied a state remedy to prevent alleged interference by their employers with their right to organize.

In the *Guss Case,* page 11, commenting upon the so-called "no-man's land, subject to regulation by no agency or court," the United States supreme court said:

"Congress is free to change the situation at will. . . . The National Labor Relations Board can greatly reduce the area of the no-man's land by reasserting its jurisdiction and, where states have brought their labor laws into conformity with federal policy, by ceding jurisdiction under sec. 10 (a)." We express the hope that the area of the no-man's land will soon be reduced, but we find no hint of power on our part to reduce it.

*By the Court.*—Judgment reversed, cause remanded with instructions to deny the injunction.

BROADFOOT, J. *(dissenting).* I must respectfully dissent from the decision herein. Assuming, as does the majority of the court, that plaintiff's activities affect interstate commerce, there are two reasons why I think the circuit court for Eau Claire county had jurisdiction in this case.

First, it is admitted that this is a case where the National Labor Relations Board, under its rules, would not take jurisdiction. Because its resources of cash and manpower make it impossible for the national board to handle all cases arising under the National Labor Relations Act it has been

required to make rules and set standards as to cases in which it will take jurisdiction. The decision states that we must assume that the national board will do its duty, although admitting that it would probably refuse to accept jurisdiction in this case. The decision contemplates that the plaintiff here must file an application with the national board, although he knows in advance that no relief will be accorded him. This will be a necessary step before starting an action in federal court to compel the national board to take jurisdiction. How long this would take is problematical. Justice delayed is justice denied. The plaintiff is a small businessman and contractor and it is probable that he would be insolvent before he could obtain any relief if picketing is to continue. Certainly due process requires that he have adequate relief. From any practical consideration he is denied due process if he is compelled to follow the course indicated in the decision.

Second, the activities of the defendants are interfering with the right of the plaintiff to carry out his contracts. Interference with the performance of a contract is a common-law tort and for that reason the state courts have jurisdiction.