CASE 98—ACTION BY JOHN TRAPP AGAINST THE CITY OF NEWPORT AND
OTHERS FOR A MANDATORY INJUNCTION TO AWARD HIM A CONTRACT
FOR CERTAIN STREET IMPROVEMENTS.—JUNE 9.

# Trapp v. City of Newport and Others.

APPEAL FROM CAMPBELL CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. AFFIRMED.

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—"LOWEST AND BEST
BIDDER"—POWER TO REJECT BID.

Held: 1. Kentucky Statutes, 1899, section 3094, gives to the general
council of cities of the second class exclusive control over
streets, and the improvements thereof; and section 3096 pre-
scribes that the general council may, by ordinance, provide for
improvements, etc. A city of the second class enacted an ordi-
nance which provided that in making improvements the work
should be awarded to the "lowest and best bidder." After-
wards it undertook to reconstruct a street, and advertised for
bids both on brick pavement and bituminous macadam. HELD,
that the fact that the bid of one proposing to do the work with
brick was the lowest in amount did not require an award to
him; that fact not being conclusive that he was the "lowest and
best bidder."

2. The ordinance having provided that the council should have the
power to reject any and all bids, the bidder could not complain
of its action in doing so.

C. L. RAISON, JR., ATTORNEY FOR APPELLANT.

PROPOSITIONS DISCUSSED AND AUTHORITIES.

1. A city council has no right or authority, in law, to arbi-
trarily, wilfully and fraudulently, and without any good reason
or excuse, reject the bid of the lowest and best bidder for the
reconstruction of a street who has complied with all the speci-
fications and provisions of the ordinance under which the
street was to be reconstructed, and who is ready, able and will-
ing to execute a contract for and construct the street as required
by the ordinance, specifications and contract, even though the
city council may have reserved the right in the specifications to
reject any and all bids. Baltimore v. Keyser, 72 Md., 106; State
v. York Co. Comrs., 13 Neb., 57; Boren v. Darke Co. Comrs., 21

Trapp. v. City of Newport and Others.

Ohio St., 311; Matthews v. City, 3 Weekly Law Bulletin, 551; State v. Marion Co. Comrs., 39 Ohio St., 181.

2. A taxpayer of the city may maintain an injunction to require and compel the council to perform its duty as required by the charter and ordinances of the city under which the street was to be reconstructed, and to compel the council to award the contract to the lowest and best bidder for the reconstruction of the street. Dillon on Mun. Corps, vol. 2, secs. 914, 915, 916, 1251; High on Injunctions, vol. 2, secs. 1237, 1241, 1242, 1262, 1251, 1300.

3. The lowest and best bidder for the reconstruction of a street is entitled to have the city council, by mandatory injunction, required and directed to award the contract to him. Baltimore v. Keyser, 72 Md., 106; State v. York Co. Comrs., 13 Neb., 57; Boren v. Darke Co. Comrs., 21 Ohio St., 311; Matthews v. City, 3 Weekly Law Bulletin, 551; State v. Marion Co. Comrs., 39 Ohio St. 181.

C. J. & W. W. HELM AND AUBREY BARBOUR, FOR APPELLEE.

In the absence of statutory provision on the subject, a city reserving the right to reject any and all bids, in its request for bids for a street improvement, may reject all bids. Anderson v. Board of President and Directors of St. Louis Public Schools, 26 L. R. A., 707, and note.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

This action was instituted by the appellant in the Campbell circuit court against the city of Newport, and its mayor and general council, for the purpose of obtaining a mandatory injunction requiring the appellees, who constitute the city government of the municipality named, to award him the contract for making certain street improvements, to which he claimed to be entitled. Newport is a city of the second class, and its charter, therefore, is contained in article 3, c. 89, of the Kentucky Statutes of 1899. In the spring of 1902 the general council, by the necessary procedure, undertook to have reconstructed Columbia street, between Third and Fourth streets, and for that purpose bids were solicited by proper advertisement. Bidders were invited to make proposals both for brick pavement and bituminous

macadam. At the proper time and place the bids on the proposed work were received and opened, and were found to be three in number—that of the appellant, who bid only on making the improvement with brick, and who proposed to do the work in question for the sum of $3,927.60; also one by John Collopy, who bid on brick, and who proposed to do the same work for the sum of $4,187.70. The appellee the Central Bitulithic Paving Company proposed to make the improvement of bituminous macadam for the sum of $4,466.90. Afterwards it made a written proposal to the general council, reducing its bid for making the improvement of bituminous macadam to $3,927.60, the precise sum for which appellant proposed to do the work with brick, whereupon the board of aldermen, to whom the question of rejecting or accepting bids by the municipal law first came, accepted the reduced proposal, and by resolution awarded the work to the Central Bitulithic Paving Company. While the matter was pending before the board of councilmen, and before that body could act in the premises, this action was instituted, and a restraining order issued by the court, prohibiting the mayor and the two boards constituting the general council of the municipality from accepting the proposal of the Central Bithulithic Paving Company, or awarding to it the contract to do the work involved in this litigation. After the issuance of the injunction by the court, the general council, by resolution, rejected all of the bids for the work, and proceeded to make new arrangements for the improvement of the street. In his petition, as amended, the appellant prosecutes this action both as a bidder upon the work, and also as a taxpayer of the city of Newport. He alleges, substantially, the facts herein set out, and claims to have been the lowest bidder for the work, and charges that the action of the municipal officers refus-

Trapp v. City of Newport and Others.

ing to award him the contract was "without authority, il-
legal, arbitrary, and capricious." By their answer the ap-
pellees set up the fact that all of the bids upon the work
had been rejected. To this, appellant filed reply, charging
that the rejection of the bids had taken place after the issu-
ance of the restraining order, and with full knowledge of
its existence, and reiterated in a large measure the allega-
tions of the petition. He also filed a demurrer to the an-
swer, and appellees filed a demurrer to his reply, and moved
to dissolve the injunction upon the face of the papers,
whereupon the court dissolved the injunction, sustained ap-
pellee's demurrer to the reply, and overruled appellant's
demurrer to the answer. Appellant declining to plead
further, the petition was dismissed, from which judgment
he has appealed.

By section 3094, Kentucky Statutes, 1899, it is provided
that "the general council (of cities of the second class) shall
have and exercise the exclusive control and power over
streets, roadways, sidewalks, alleys, landings, walks, pub-
lic grounds and highways of the city; to establish, operate,
alter, widen, extend, grade, pave, repave, block, construct,
reconstruct, sweep, sprinkle, or otherwise improve, clean
and keep repaired, the same." Section 3096 prescribes that
"the general council may, by ordinance, provide for the
construction or reconstruction of the streets, alleys and
other public ways and sidewalks, or part thereof, of the
city, upon a petition of the owners of a majority of the
front or abutting feet of the real estate abutting on such
proposed improvement, or without a petition, by a vote of
two-thirds of the members-elect of each board of the gen-
eral council." In pursuance of the foregoing authority,
the general council of Newport passed an ordinance enti-
tled "An ordinance prescribing the method of procedure,

governing and regulating the construction and reconstruc-
tion of all public ways and sidewalks in the city of New-
port, Kentucky," which was approved May 7, 1894. So
much of this ordinance as is pertinent to the questions to
be adjudicated in this case is as follows: "In the ordinance
providing for the improvement by construction or recon-
struction of any public way, or sidewalk or part thereof,
the city civil engineer shall be directed to advertise not
less than three times in the city's official paper for proposals
to be received at his office at 12 o'clock noon of a day, not
a legal holiday, to be fixed by him, not less than ten nor
more than fifteen days after the date of advertisement, and
he shall advertise for same within ten days after the said
ordinance shall have been signed by the mayor. The pro-
posals for doing said work shall be immediately at noon of
said day opened in the presence of the mayor and city civil
engineer, superintendent of public works, chairman of the
improvement committee of the board of councilmen, a ma-
jority of whom shall constitute a quorum for the transac-
tion of said business of opening said proposals. If a ma-
jority of said persons be not present, the bids or proposals
shall not be opened, but an adjournment shall be had to the
following day at twelve o'clock noon, when, if a quorum of
said board be present, said proposals shall be opened, other-
wise an adjournment as above shall be had from day to day
until a quorum can be secured. Upon opening said propos-
als, said committee of persons above shall report their
findings as to same to the board of the general council,
which first convenes in regular session thereafter, and said
board, if the lowest and best bidder for same conforming
to the requirements of the plans and specifications there-
for shall be within the estimate of said proposed work,
shall thereupon award the contract therefor to said lowest

and best bidder and report same to the other board of general council, which shall also so award same, and the mayor shall thereupon, upon direction of the general council, enter into a contract with said bidder for the performance of said work. The general council shall have the power to, and specifications shall so state, reject any and all bids therefor, in which case the city civil engineer shall proceed to re-advertise for proposals for same." There is no claim by appellant that any of the proceedings leading up to the award of the contract to the proper bidder was irregular or illegal. On the contrary, he shows that all the steps taken in the proceeding to have the improvement made, up to the time of the award of the bid, were in strict harmony with, and conformed to, the charter and ordinance governing the matter. The questions for adjudication in this case, therefore, are, first, was the appellant the lowest, and best bidder for the work to be done? and, second, assuming him so to be, had appellees the right to reject all of the bids, including that of appellant?

Appellant assumes that, because on the original proposal his was for the least sum, therefore it was the lowest and best bid. It will be observed that the proposals were to be in the alternative, either brick or bituminous macadam. The right thus to select two materials of which a public improvement may be made, and submit them for bids in the alternative, is fully recognized in the case of Barber Asphalt Company v. Garr, 115 Ky., 334, 24 R., 2227, 73 S. W., 1106. It does not follow, therefore, that, because a bidder's proposal is for the least sum, he is the lowest bidder. The fact as to whether he is, or not, depends upon a proper consideration of other questions besides the price. One class of material may make a much more durable and satisfactory highway than another, and may be, therefore, really

cheaper at a higher price than the inferior at a lower. These matters are peculiarly within the province of those vested by law with the power of making such improvements. The court should proceed with great caution when asked to interfere with the discretion conferred by law upon municipal officers in regard to such matters. By the provisions of the ordinance under which the work was to be done, the contract was not to be let to the lowest, but to the lowest and best bidder; and the question, therefore, which presented itself to appellees, when the bids were opened, inspected and compared, was whether or not it was better to adopt the bituminous macadam as the material with which to construct the highway at the greater price, or the brick pavement at the lower price. It may have been that the bituminous macadam, because of its superiority and its greater durability, the ease with which breaks can be mended, the smoothness of its surface, and the greater cheapness with which it can be kept clean, would make it, in the long run, less expensive than the brick street at a lower price. If so, then we can see no reason why the municipal officers should not have had the right to award the contract to the bidder whose proposal, upon a survey of all the questions involved, seemed to them the cheapest. We have been cited to no authority which militates against the principle here announced, and we believe that none can be found, which, in the absence of the charge of fraud or corrupt motive, neither of which is made here, would authorize interference by the court with the exercise on the part of the municipal officers of their judgment as to which of two materials for the construction of a highway would be the cheapest and the best, although costing different sums. *In re* McCain, 9 S. D., 57, 68 N. W., 163, it was said: "We believe the better doc-

trine is that the duties of officers intrusted with the letting of contracts to the lowest bidder are not the duties of a mere ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond the control of the courts by mandamus. It was not the duty of the board to accept the Gossage bid. Its duty consisted in carefully and honestly considering the terms of each bidder, the needs of the county, the responsibility of each bidder; and upon the facts, as the members believed them to exist, the board was bound to act. The duty of determining what bids were the lowest, all things considered, and who was or was not a responsible bidder, belongs to the board. It was a duty confided to its honest judgment and sound discretion. This discretion did not rest with the circuit court. It should have been slow to interfere with its exercise by the officers specially intrusted therewith." In the case of People v. Kent, 160 Ill., 665, 43 N. E., 760, which was a proceeding to require the officers having the matter in charge to award a contract to one who claimed to be the lowest responsible bidder, the court said: "It appears that the defendant, after investigating the records made by the relator in doing similar work before, and the other matters referred to in his answer, determined that the relator was not the lowest responsible bidder. He was vested with the exercise of official judgment and discretion, with which, in the absence of fraud, the courts have no right to interfere." To the same effect is the case of Kelly v. City of Chicago and others, 62 Ill., 279. In Smith's Modern Law of Municipal Corporations, section 746, this rule is announced: "Where an officer, in the letting of a contract to a bidder, is vested with the exercise of official judgment and discretion, as where the contract is to be let to the lowest responsible bidder, courts have

no right, in the absence of fraud, to interfere with the exercise of that judgment and discretion. The officer's duty is not merely ministerial, and can not be controlled by mandamus."

But even if this were not so, appellant would have no just ground of complaint that his bid was rejected. The ordinance under which it was made contains the following reservation on the subject of proposals: "The general council shall have the power to, and specifications shall so state, reject any and all bids therefor, in which case the city civil engineer shall proceed to re-advertise for proposals for same." This reservation was placed in the ordinance for the express purpose of relieving the municipality of litigation similar to that now under consideration. Experience has taught municipal officers that much vexatious litigation arises from the claim of bidders for public work to be the lowest and best; and while it is necessary, for the benefit of the taxpayers, that all public work should be let to the lowest and best bidder, it has also been found necessary to vest somewhere the absolute power of deciding who is the lowest and the best, and also, when it is to the interest of the public that any and all bids may be rejected without being required to give any reason therefor. Municipal officers are often certain that the bids for public work are too high, and that a reletting would redound to the public good. Sometimes they have evidence of combinations among bidders by which competition is excluded, and, but for the power of rejecting any and all bids, they would be unable to protect the interest of the taxpayers against such combinations. In the case of Anderson v. Board of President and Directors of Public Schools (Mo.), 27 S. W., 610, 26 L. R. A., 707, the court, in discussing the power of rejection of bids for public work, says: "No claim is advanced in

the petition looking to a recovery for fraud or deceit in making the proposals for bids. It is, indeed, asserted that the defendant rejected the plaintiffs' bid 'without cause, arbitrarily and capriciously, through favoritism and bias.' But if the defendant had the absolute right to reject any and all bids, no cause of action would arise to plaintiffs because of the motive which led to the rejection of their bid. The right to reject the bids was unconditional. Defendant was entitled to exercise that right for any cause it might deem satisfactory, or even without any assignable cause. Whatever its rules or practice as to the acceptance of bids may have been, plaintiffs' rights can not justly be held to be greater than those conferred by the published advertisement on which their bid was made. That advertisement was not an offer of a contract, but an offer to receive proposals for a contract." So, in the case at bar, when appellant made his bid, he was confronted with the fact that the municipality reserved the right to reject it unconditionally. This reservation of power is a wise and salutary one, which experience has taught public officers to be necessary for the protection of municipalities from unnecessary litigation.

We perceive no error in the judgment dismissing the petition of appellant. Wherefore it is affirmed.