# ELECTRONICS UNLIMITED, INC., AND ANOTHER v. VILLAGE OF BURNSVILLE.

182 N. W. (2d) 679.

January 8, 1971—No. 42272.

*Grannis & Grannis* and *Vance B. Grannis,* for appellant.
*Richard J. Battis,* for respondents.
*Louis W. Claeson, Jr.,* for League of Minnesota Municipalities, amicus curiae.

Heard before Knutson, C. J., and Otis, Peterson, Kelly, and Rosengren, JJ; reconsidered and decided by the court en banc.

CHESTER G. ROSENGREN, JUSTICE.*

This action arose out of the award by the village of Burnsville of a contract for certain radio equipment to the highest bidder. The party submitting the low bid commenced an action in Dakota County District Court and obtained a permanent injunction barring the village from awarding the contract to the high bidder and a mandatory injunction directing the village to award the contract to plaintiff, the apparent low bidder. The village has appealed that court's order denying its motion for amended findings or a new trial. The essential facts of this case are as follows:

On March 13 and 20, 1969, the village of Burnsville advertised for sealed bids in anticipation of the purchase of mobile monitor radio units. Four bids were received, including one by Motorola, Inc., for $7,470, and one by Electronics Unlimited, Inc., doing business as Air Comm (hereinafter "Air Comm"), for $5,998.80. The bids were opened by the village council on March 21, 1969, but the council deferred acceptance of any proposal until April 7, 1969. It appears that the village wished to obtain additional information during that interim period from both firms with respect to the specifications and quality of the products which were the subject of their bids. (Prior to December 1968, one of the village's public safety officers had obtained information about the type of monitoring equipment used by other communities.) Because certain specifications in the manufacturer's pamphlet accompanying Air Comm's bid had been altered, village officials wrote to the manufacturer, requesting specifications. In response to that request, the manufacturer sent general specifications which indicated that the model included in Air Comm's bid did not in fact meet the village's specifications relating to sensitivity and selectivity. Apparently Air Comm then requested its manu-

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

facturer to inform the village officials that the bid by Air Comm would meet specifications as to sensitivity and selectivity. A telegram to that effect was sent, and the message was conveyed by telephone to "someone" in the Burnsville Public Safety Department. It appears that the telephone message was brought to the attention of the Burnsville director of public safety but that he disregarded it because "it was [his] practice not to accept telephone messages of that kind or not to rely on them." No written copy of that telegram was requested until after the awarding of the contract to Motorola and the commencement of this proceeding.

The Burnsville director of public safety recommended to the council that it purchase the Motorola units. In essence, the reasons he gave for his recommendation were: He felt the quality and service of the Motorola product were superior; Burnsville was using other Motorola equipment with satisfaction; there were no Minnesota agencies using the Regency equipment distributed by Air Comm; and the technical specifications submitted by Air Comm were "questionable."

On April 7, 1969, the village council, after the Air Comm representative had personally argued the merits of his product, awarded the contract to Motorola. Air Comm then commenced this action in Dakota County District Court. Extensive testimony was taken, and in its defense the village introduced evidence which tended to cast doubt upon the quality and suitability of the Regency product. Most of that evidence, however, was obtained after the fact of awarding the contract. For example, it was shown that the Regency product had not been tested by Underwriters Laboratories although there was in the Air Comm bid language which could be interpreted as implying that the product was so approved. Similarly, there was testimony by a Motorola official—the substance of which, however, apparently was not known to the village when it let the contract—that alterations which Regency would make on the equipment in order to

bring it to the village's specifications could cause serious service problems.

After considering such testimony, the district court declared null and void the contract which had been let to Motorola and ordered the village to award the contract to Air Comm. The court determined that Air Comm's bid was the lowest responsible bid and that the action of the village was arbitrary, capricious, unreasonable, and a violation of Minn. St. 412.311, which provides that every village "contract for the purchase of merchandise, materials or equipment * * * shall be let to the lowest responsible bidder * * *."

The questions presented on this appeal are: (1) Whether the district court erred in holding that Air Comm's product met the village's specifications such that the village violated § 412.311 when it awarded the contract to a higher bidder; and (2) even if the court properly held that the village had violated § 412.311, whether the court erred in ordering the village to accept Air Comm's bid rather than merely prohibiting it from accepting Motorola's bid.

■ The first issue here presented relates largely to the findings of fact by the court below. In its memorandum, the district court stated that Air Comm's bid substantially complied with the specifications required; Air Comm's bid was the lowest responsible bid; and the village's action in rejecting it was arbitrary and unreasonable. The Air Comm bid did contain certain deviations from the specifications prescribed by the village concerning the type of carrying handle, the case construction material, and the method of attaching wires. The court, however, considered those deviations unimportant and found that the variations in selectivity and sensitivity urged by the village had not been established and that the unit bid by Air Comm was entirely compatible with existing equipment of the village.

Appellant argues that the district court erred in holding that the Air Comm bid substantially complied with the specifications issued by the village. Appellant's arguments on this issue, how-

ever, seemingly go primarily to the weight of the evidence and an examination of the transcript in this proceeding indicates that the trial court could reasonably conclude that the specifications of the unit bid by Air Comm did substantially comply with those demanded by the village. The only alleged variations of any significance relate to sensitivity and selectivity, and it appears from the record that the required specifications in those respects could be met by factory adjustments.

Thus, it is apparent that the trial court could reasonably conclude that there was no substantial difference between specifications of the Air Comm product and those of the Motorola product. Under our statute, Minn. St. 412.311, there must remain with the village officials a reasonable degree of fair discretion in determining the "lowest responsible bidder." Previous decisions of this court have recognized the existence of a reasonable discretion on the part of a village in the letting of public contracts. Otter Tail Power Co. v. Village of Elbow Lake, 234 Minn. 419, 49 N. W. (2d) 197, 27 A. L. R. (2d) 906; Nielsen v. City of St. Paul, 252 Minn. 12, 88 N. W. (2d) 853; Otter Tail Power Co. v. MacKichan, 270 Minn. 262, 133 N. W. (2d) 511. Whether the limits of that discretion have been adhered to in determining who is the lowest responsible bidder and whether a bid meets stated specifications are primarily questions of fact to be determined by the trial court. On the facts of this case, there is adequate support for the determination of the trial court that Air Comm's bid did substantially meet the village's specifications and, as a legal conclusion, that awarding the contract to Motorola violated Minn. St. 412.311. It should be emphasized that had the trial court reached the opposite conclusion, on this record we would also affirm that conclusion.

As to the second issue presented, however, it appears that appellant is correct in its assertion that the district court erred in ordering acceptance of the Air Comm bid. The directive of the trial court in ordering the award of the contract to the lowest bidder appears to be an act in the nature of mandamus, and for

such action to be upheld the requirements for issuing mandamus against public officials must be met. Traditionally, mandamus may issue against a public officer only to compel a "ministerial" act and will not issue when there obtains on the part of such official any degree of discretion with respect to the act in question. Thus, whether mandamus may lie to compel the issuance of a public contract must depend upon the degree of discretion which legislative authority may have conferred upon the public official or body in question. As stated above, this court has previously recognized a discretion on the part of such public officials in this regard. Whether, in light of that discretion, a court may compel acceptance of a particular bid is a question which this court has not previously encountered directly.

The experience of other states having statutes similar to Minnesota's offers some guidance. Minn. St. 412.311 provides in part:

"* * * Every contract for the purchase of merchandise, materials or equipment or for any kind of construction work undertaken by the village which requires an expenditure of $2000 or more, * * * *shall be let to the lowest responsible bidder* * * *." (Italics supplied.)

Such language, when found in statutes of other states, has been construed as granting to the municipality sufficient discretion to preclude a court from compelling acceptance of a particular bid. See, 17 McQuillin, Municipal Corporations (3 ed.) § 51.52, which states:

"* * * [W]here a contract is required to be let to the 'lowest responsible bidder' a bidder cannot compel the awarding of the contract to himself merely because his bid is the lowest, as such a provision is enacted for the benefit of the public and not the bidder." (Citing inter alia Kelly v. Chicago, 62 Ill. 279; Madison v. Baltimore City Harbor Board, 76 Md. 395, 25 A. 337; Anderson v. School Board, 122 Mo. 61, 27 S. W. 610, 26 L. R. A. 707; State v. Board of Education, 24 Wis. 683.)

See, also, Annotation, 80 A. L. R. 1382, 1384, which states:

"* * * [W]here the statute or charter is mandatory in directing the contract to be let to the lowest responsible bidder, or the lowest and best bidder, mandamus does not ordinarily issue to compel the acceptance of a particular bid."

Moreover, it is apparent from the decisions of this court recognizing the discretion committed to the local authorities that mandamus is not here an appropriate remedy. It has been stated that the inquiry on judicial review is "to determine whether officials in the exercise of their discretion have applied the method used in an arbitrary, capricious, or unreasonable manner." Nielsen v. City of St. Paul, 252 Minn. 12, 18, 88 N. W. (2d) 853, 858, quoted favorably in Otter Tail Power Co. v. MacKichan, *supra.* Moreover, in the Nielsen case, it was stated by way of dictum that—

"The awarding of a contract is an administrative act of discretion vested by law in the governing authorities of the city. When and if the court's power is called upon it is to prevent the doing of an unlawful act in that respect. * * * But the courts cannot direct the authorities as to how they shall exercise that discretionary power, nor direct to whom they must let a contract. They may only enjoin them from doing so illegally * * *."

The mere fact that, as the trial court found in the case at hand, the local authorities have abused that discretion by awarding a contract to a party other than the lowest responsible bidder does not mean that the local authorities must therefore be deprived entirely of the discretion committed to them by law. Rather, the proper function of the court is simply to restrain the unlawful exercise of that discretion. Hence, all that is required here is the order of the trial court enjoining the village from awarding the contract on the bid by Motorola. Confronted with that injunction, the municipality, in effect, has the option of accepting the remaining lowest responsible bid, or, if deemed

appropriate, of rejecting all bids and readvertising the contract.

The foregoing conclusion may be supported on another ground as well, namely, the reservation by the village of the "right to reject any and all bids, * * * and to award the bid in the best interest of the Village." Respondent has not cited, and research has failed to disclose, any Minnesota case or statute indicating that a municipality may not reserve the right to reject all bids. That being so, it appears that the express reservation by the village is sufficient to give it the right reasonably to reject all bids even after its original award has been enjoined by a court. In Annotation, 31 A. L. R. (2d) 469, 478, it is stated:

"The right of public authorities to reject all bids in the absence of an express reservation in a constitutional or legislative provision has been recognized in a number of cases, notwithstanding the provisions of a statute or city charter requiring the letting of the contract to the lowest bidder or lowest responsible bidder.

\* \* \* \* \*

"In the absence of, or without mentioning, a constitutional or legislative provision expressly reserving the right to reject all bids, the courts have recognized the right, where the invitation to bid contained an express reservation of the right."

Moreover, the right of the municipality under such circumstances to reject all bids may continue even after litigation concerning its initial award has commenced. See, Annotation, 31 A. L. R. (2d) 469, 489; Trapp v. City of Newport, 115 Ky. 840, 74 S. W. 1109; Bielec Wrecking & Lbr. Co. v. McMorran, 21 App. Div. (2d) 949, 251 N. Y. S. (2d) 331, reversing 42 Misc. (2d) 970, 249 N. Y. S. (2d) 686.

Research has disclosed no decision suggesting that where there has been a reservation of a right to reject all bids, such right may be lost after litigation has commenced and an injunction against awarding the contract to a particular bidder has been issued. Thus, since the village here apparently retained the right in its

discretion to reject all bids, mandatory relief which would remove that discretion is not appropriate.

Affirmed in part and reversed in part.

PETERSON, JUSTICE (dissenting).

I concur in affirming that part of the trial court's order enjoining the municipality from awarding the contract to Motorola, Inc., the high bidder.

I respectfully dissent, however, from the reversal of that part of the trial court's order directing that the defendant municipality issue a contract to the low bidder, plaintiff Electronics Unlimited, Inc. The majority opinion proceeds from the proposition that the municipality, both by statute and by the express reservation of a right to reject any and all bids, in *any and all* circumstances retains a residual discretion with which a court may not interfere. Proceeding from the equally valid proposition that discretion is neither limitless nor endless, I reach a contrary conclusion in the particular circumstances of this case.

As we stated in Coller v. City of St. Paul, 223 Minn. 376, 387, 26 N. W. (2d) 835, 841, "[t]he very purpose of requiring competitive bidding is to divest the officials having the power to let contracts of discretion in some respects and to limit its exercise in others." It is the abuse of discretion in the letting of public contracts at which the statute is aimed, including favoritism or extravagance. The statutory limitations are of such great importance to taxpayers that, as cautioned in Coller (223 Minn. 388, 26 N. W. [2d] 842), they "should receive a construction always which will fully, fairly, and reasonably effectuate and advance their true intent and purpose, and which will avoid the likelihood of their being circumvented, evaded, or defeated."

It is generally consistent with the statutory policy for the municipality to reserve a right reasonably to reject all bids. Where the municipality, as a matter of discretion, determines not to proceed with a project or where it determines, after receiving bids, that the cost of the project exceeds the resources

that it wishes to commit to it, the public interest is served. Where, however, as in the particular circumstances of this case, there is no objective reason for rejecting the low bid,[1] the public interest is not served and the statutory purpose may be subverted. The municipality should not, under such reservation of the right of rejection, be permitted to reject the lowest responsible bidder for no reason or for reasons inconsistent with the statute.

The particular circumstances of this case indicate to me that the municipality had exhausted its discretion. It had determined to purchase the radio equipment for which it had solicited bids. It had not determined to reject all bids for any reason of excessive price. It obviously was not undertaking to avoid litigation. The only act that remained was to determine upon the lowest responsible bidder. Even to the extent that that determination involved any discretion, the trial court found that its action was an abuse of discretion and contrary to statute. Clearly, therefore, all that remained was the nondiscretionary act of awarding the contract to the low bidder.

Permitting the municipality to reject the low bid is, in the circumstances of this case, not required by the statute. Worse, in my view, it tends to frustrate the salutary purpose of competitive bidding for public contracts. It is, of course, well established that the statute was enacted for the benefit of the public, not the bidder. This does not mean, however, that the low bidder is without interest or standing to compel compliance with the statute. As a practical matter, if the thwarted low bidder is, in these cir-

---

[1] The majority opinion intimates that plaintiff may have made a material misrepresentation, which was not discovered until later. If that were a fact, an independently valid reason would exist for rejection or rescission. The trial court, however, did not, and this court cannot, make such finding. If we were to remand to the trial court for a determination of whether the municipality had such an objective reason for rejection, rather than mere favoritism or personal preference, I would concur.

cumstances, denied the award of a contract, enforcement of the statute may be substantially impaired. A mere denial of an award to a competitor is scant solace for the litigant. Although not on all fours, there is an analogy to the situation of a civil litigant who succeeds in overruling a common-law rule of contract or that of a criminal accused who succeeds in establishing a procedural rule of constitutional right. Although in either case the new rule is made only prospective in its application, it is nevertheless, as a matter of public policy, made contemporaneously applicable to the litigant himself so as not to discourage persons from undertaking such litigation.

OTIS, JUSTICE (dissenting).
I join in the dissent of Mr. Justice Peterson.