**J.L. MANTA, INC., Respondent,**

v.

**Richard P. BRAUN, individually and in his capacity as Commissioner of Transportation for the State of Minnesota, et al., Respondents (C1–85–821), Appellants (C4–85–957),**

**and**

**Rainbow, Inc., Appellant (C1–85–821), Respondent (C4–85–957).**

Nos. C1–85–821, C4–85–957.

Court of Appeals of Minnesota.

Nov. 5, 1985.

Review Granted Jan. 17, 1986.

Mark R. Miller, Minneapolis, Stokes, Shapiro, Fussell & Genberg, Atlanta, Ga., for J.L. Manta, Inc.

Hubert H. Humphrey, III, Atty. Gen., Donald J. Mueting, Special Asst. Atty. Gen., St. Paul, for Braun.

Richard T. Kavaney, St. Paul, for Rainbow, Inc.

Heard, considered and decided by HUSPENI, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

The Commissioners of the Departments of Transportation and Administration (the State) and Rainbow, Inc. appeal from an order permanently enjoining the State from awarding a specific bridge painting contract to any person or business other than Manta, Inc. and from rejecting all bids for the project. The State and Rainbow contend that the trial court erroneously applied Minn.Stat. § 16B.09, subd. 2 (1984), and that it is without authority to enjoin the State from awarding the contract to any person or business other than Manta and from rejecting all bids. We affirm in part and reverse in part.

## FACTS

The Minnesota Commissioner of Transportation advertised for bids on a bridge painting project. Manta and Rainbow were among the contractors who submitted bids, which were publicly opened on March 22, 1985. Manta had the lowest bid at $301,-749. Rainbow's was the next lowest bid at $332,100. Manta's bid contained two altered prices on line three of the bid form. Manta's price bid for traffic control during the painting project was originally $4,088 but was changed by a Manta vice president to $4,082 in both the unit price and the extended price columns on the bid form. The numeral "2" was written over the "8" in both columns. The changes were made before the bid was submitted. Neither change was initialed. There was no change in the total bid price.

Manta's bid was rejected by the Commissioner because line three was altered without proper acknowledgment. The State accepted Rainbow's bid of $332,215. Before

the contract was executed with Rainbow, Manta sought injunctive relief and a writ of mandamus. Rainbow intervened. The trial court found that Manta's bid was clear but did not comply with the technical requirements of specification 1206 of the State's Standard Specifications for Construction (1983) because the changes on the bid were neither crossed out nor initialed by the person signing the bid. It also found that the alteration was made in good faith and for the purpose of submitting a correct bid. Finally, it found that Manta substantially complied with the bidding requirements and the State's refusal to award the contract to Manta was arbitrary and unreasonable.

The trial court permanently enjoined the State both from entering into a contract for painting the bridge with a person or business other than Manta and from rejecting all bids for the project. In its accompanying memorandum, the court noted that, if Manta had not corrected its bid, the State would have done so by changing the total just as it changed the total in Rainbow's bid because of error. It cited the State's failure to call Manta in to permit it to make a proper alteration and the State's alteration of Rainbow's bid as evidence of arbitrariness.

### ISSUES

1. Does the evidence support the trial court's conclusion that the State was arbitrary in its treatment of Manta's and Rainbow's bids?

2. Does the trial court have the authority to enjoin the State from awarding the contract to any person or business other than Manta?

3. Does the trial court have the authority to enjoin the State from rejecting all bids?

### ANALYSIS

■ 1. Regardless of the method used when letting public contracts, it is for the courts to determine whether officials in the exercise of their discretion have applied the method used in an arbitrary, capricious or unreasonable manner. *Griswold v. Ramsey County*, 242 Minn. 529, 535, 65 N.W.2d 647, 651–52 (1954). In this case the trial court concluded that the State was arbitrary in the way it treated the bid alterations. We agree.

Minn.Stat. § 16B.09, subd. 2 governs alterations in bids. That subdivision provides:

> A bid containing an alteration or erasure of any price contained in the bid which is used in determining the lowest responsible bid must be rejected unless the alteration or erasure is corrected pursuant to this subdivision. An alteration or erasure may be crossed out and the correction printed in ink or typewritten adjacent to it and initialed in ink by the person signing the bid.

Minn.Stat. § 16B.09, subd. 2 (1984). The same restrictions are incorporated into specifications 1206 and 1301 of the State's Standard Specifications for Construction (1983).

Manta's bid was altered in two spots on line three of the bid form. A number "2" was superimposed on the number "8" altering the unit price bid for traffic control from $4,088 to $4,082. The same alteration was made to the extended price. The corrected extended price plus the extended prices on lines one and two equaled the bid subtotal of $301,749. Thus, Manta conformed its unit prices and extended prices to the subtotal which remained unchanged. The bid was rejected because the change was not acknowledged as required by Minn.Stat. § 16B.09, subd. 2.

Rainbow's bid was $332,100. When Rainbow submitted its bid, the spaces for the unit price bid for mobilization and traffic control were left blank on the bid form. After the bids were read, State personnel filled in the blank spaces with the amounts which were listed in the extended amount bid column for mobilization and traffic control. State personnel also crossed out the amount listed for painting and filled in a new amount above the crossed-out figure. The State made this change because Rain-

bow provided an estimate of square footage which was less than that called for in the specifications and thus, the extended amount for painting was understated by $115. The total bid amount was also changed to reflect the change in the amount for painting. Rainbow's bid was accepted.

The trial court found that Manta made its alterations in good faith and for the purpose of submitting a correct bid. Since the amount changed on Manta's bid was merely $6 on a bid of over $300,000 and the next nearest bid was for over $30,000 more, the change was *de minimus*. *"De minimus* in the law has always been taken to mean trifles—matters of few dollars or less." *Hehl v. Chippewa & Red Cedar Valley Carpenters' District Council,* 4 Wisc.2d 629, 635, 91 N.W.2d 226, 229 (1958) (quoting *National Labor Relations Board v. Suburban `Lumber Co.,* 121 F.2d 829, 832 (3rd Cir.), *cert. denied,* 314 U.S. 693, 62 S.Ct. 364, 86 L.Ed. 554 (1941)). Six dollars is a matter of a few dollars.

State personnel changed Rainbow's bid by $115 dollars. By making that change, State personnel converted a technically nonresponsive bid into a responsive one. State personnel also filled in the unit price which is the governing price in state highway bids. None of these changes are permitted under Minn.Stat. § 16B.09, subd. 2, because none of them were initialed by the person signing the bid.

Rainbow argues that the State's actions after bid opening were not impermissible alterations, rather its actions were permitted by section 1301 of the specifications. This section states in part:

> After the proposals are opened and read, they will be *compared* on the basis of the correct summation of the products of the scheduled quantities and unit bid prices. * * * In case of a discrepancy between a unit bid price and the extension, the unit price shall govern.

Standard Specifications for Construction § 1301 (1983) (emphasis added). Section 1301 of the specifications indicates that a comparison of the bids will be made and the unit price shall govern if there is a discrepancy. Section 1301 does not contradict Minn.Stat. § 16B.09, subd. 2 by further indicating that State personnel can make an alteration on the bid itself.

■ The State acted arbitrarily when it made and accepted the changes in Rainbow's technically nonresponsive bid, while at the same time it rejected the technically defective, but *de minimus,* changes in Manta's bid.

■ We emphasize that:

> A fundamental purpose of competitive bidding is to deprive or limit the discretion of contract-making officials in the areas which are susceptible to such abuses as fraud, favoritism, improvidence, and extravagance.

*Telephone Associates, Inc. v. St. Louis County Board,* 364 N.W.2d 378, 381 (Minn. 1985) (quoting *Griswold,* 242 Minn. at 536, 65 N.W.2d at 652). Alterations made by the State as well as those made by contractors are governed by Minn.Stat. § 16B.09, subd. 2. The legislature sought to eliminate opportunities for fraud and collusion and its mandate must be respected even when, as here, there is no evidence of fraud or collusion. *Cf. Telephone Associates, Inc.,* 364 N.W.2d at 382 (allowing municipal officials to insert a dollar amount in place of a nonresponsive answer in a bid proposal creates an opportunity for fraud and collusion and cannot be tolerated even when there is no evidence of fraud or collusion).

"The basic purpose of competitive bidding is to give to the public the benefit of the lowest obtainable price from a responsible contractor." *Foley Bros., Inc. v. Marshall,* 266 Minn. 259, 264, 123 N.W.2d 387, 391 (1963). The State acknowledges that Manta is a responsible bidder. By its arbitrary treatment of the bids, the State has denied the public the benefit of the lowest bid. Thus, its decision to reject Manta's bid and to accept Rainbow's bid not only suffers from arbitrariness but it runs counter to public policy.

2. The trial court enjoined the State from awarding the contract to any business

or person other than Manta. The State contends the court's order is improper because mandamus cannot be used to compel a discretionary act.

■■■ Under the trial court's order, the State must award the contract to Manta if it elects to have the bridge painted. Thus, the trial court's directive to the State is in the nature of mandamus. *See Electronics Unlimited Inc. v. Village of Burnsville*, 289 Minn. 118, 122, 182 N.W.2d 679, 682 (1971). Traditionally, mandamus may issue against a public officer only to compel a "ministerial" act but it will not issue when the official acts with any degree of discretion. *Id.* at 123, 182 N.W.2d at 682. *But see Baker v. Connolly Cartage Corp.*, 239 Minn. 72, 57 N.W.2d 657 (1953).

■■ We conclude that the act of the State in submitting the bridge painting contract to the bidding process and awarding the contract to "the lowest responsible bidder" is discretionary. That determination is consistent with the language of Minn. Stat. § 16B.09, subd. 1 (1984) which provides:

All state contracts and purchases made by or under the supervision of the commissioner or an agency for which competitive bids are required must be awarded to the lowest responsible bidder, taking into consideration conformity with the specifications, terms of delivery, and other conditions imposed in the call for bids.

Minn.Stat. § 16B.09, subd. 1 (1984). This statutory language confers sufficient discretion upon the State to preclude the trial court from compelling the State to award the contract to Manta if a contract is awarded.

Further, we consider that the language of the Minnesota Supreme Court in *Electronics Unlimited* controls here:

The mere fact that * * * the local authorities have abused [their] discretion by awarding a contract to a party other than the lowest responsible bidder does not mean that the local authorities must therefore be deprived entirely of the discretion committed to them by law. Rather, the proper function of the court is simply to restrain the unlawful exercise of that discretion. Hence, all that is required here is the order of the trial court enjoining the village from awarding the contract on the bid by [one of the bidders].

*Electronics Unlimited*, 289 Minn. at 124, 182 N.W.2d at 683.

Under the rationale of *Electronics Unlimited*, the trial court had the authority to enjoin the State from awarding the bridge painting contract to Rainbow. However, it did not have the authority to enjoin the State from awarding that contract to any business or person other than Manta. Hence, we agree with the trial court that it would be improper for the State to award the contract to Rainbow, but we cannot affirm the trial court's determination that the State must award the contract to Manta.

3. The State further argues that the trial court erred in enjoining the State from rejecting all bids. The rejection of bids is governed by statute:

*Any bid* may be rejected. In a case where competitive bids are required *and where all bids are rejected*, new bids, if solicited, must be called for as in the first instance, unless otherwise provided by law.

Minn.Stat. § 16B.09, subd. 1 (1984) (emphasis added). This section replaces Minn. Stat. § 16.08 (1982) which was repealed in 1984. *See* 1984 Minn. Laws ch. 544, §§ 14, 90. Minn.Stat. § 16.08 provided that "[a]ny or all bids may be rejected." We must presume that by eliminating the words "or all" from the current statute, the legislature intended to effect a change in the meaning of the law. *See International Union of Electrical and Machine Workers of America, Local No. 1140 v. Portec, Inc.*, 303 Minn. 341, 344, 228 N.W.2d 239, 242 (1975). The presumption is unrebutted.

■■■ We conclude that by deleting the words "or all" the legislature intended to remove the State's authority to reject all

bids as a group for the sole purpose of resoliciting new bids. Under the statute, the State retains the authority to reject any individual bid. However, there must be some substantial reason for the rejection. *See Foley Bros.*, 266 Minn. at 263, 123 N.W.2d at 390. In a case where there is substantial reason to reject each bid in a lot with a result that all bids in the lot are rejected, any solicitation of new bids must be called for as in the first call.

While the State here can no longer reject all bids for the sole purpose of resoliciting new bids, it may, of course, determine not to proceed with the project. In such a case, rejection of all bids would be proper. Rejection of all bids would also be proper if there is some substantial reason for rejecting the Manta bid. While we cannot discern any basis upon which the State could avoid awarding the contract to Manta, we recognize that we are limited in our power to order such an award. *Electronics Unlimited*, 289 Minn. at 124, 182 N.W.2d at 683.

Since the State no longer has authority to reject all bids for the sole purpose of resoliciting new bids, the trial court's injunction was in some respects proper. This injunction, however, must be limited in its scope. The State has the authority to reject any bid if the State complies with the requirements of *Foley*. It also has the authority to decide not to proceed with the project at all. It may not be enjoined from exercising this authority.

### DECISION

The trial court had ample basis for concluding that the State's treatment of Manta's and Rainbow's bids was arbitrary. The trial court is precluded from compelling the State to award the contract to Manta if a contract is awarded, because the awarding of a contract to the lowest responsible bidder is a discretionary act. Further, the trial court may not order that a project be undertaken nor may it enjoin the State from rejecting any individual bid. The State can be and is enjoined from rejecting all bids in the lot for the sole purpose of resoliciting bids.

Affirmed in part and reversed in part.