J.L. MANTA, INC., Respondent,

v.

Richard P. BRAUN, individually and in his capacity as Commissioner of Transportation for the State of Minnesota, et al., petitioners, Appellants,

and

Rainbow, Inc., Respondent.

Nos. C1-85-821, C4-85-957.

Supreme Court of Minnesota.

Aug. 29, 1986.

Rehearing Denied Oct. 3, 1986.

Hubert H. Humphrey, III, Atty. Gen., Donald J. Mueting, Sp. Asst., St. Paul, for appellants.

Mark Miller, Minneapolis, for J.L. Manta.

Michael A. Mogill, Atlanta, Ga., for J.L. Manta.

Richard T. Kavaney, St. Paul, for Rainbow Inc.

COYNE, Justice.

Respondent J.L. Manta, Inc. obtained a permanent injunction barring the State of Minnesota from awarding a bridge painting contract to Rainbow, Inc. and precluding the State from rejecting all bids and readvertising for bids. We reverse.

Early in 1985 the Department of Transportation (DOT) advertised for bids for painting a bridge over the Mississippi River on Trunk Highway 3. The bid form indicated that the project comprised three

items: mobilization, traffic control, and painting. To the right of each item listed on the bid form were columns for the approximate quantity involved, the unit bid price, and the total bid amount for the item or the extension. Mobilization, or start-up costs, and traffic control were single unit items. The quantity for the painting was 281,100 square feet.

The bids ranged from Manta's low bid of $301,749 to a high bid of $696,530—with the majority of the seven bids exceeding $450,000. Manta's bid, however, contained an alteration. The unit price and extension for the traffic control item had been changed from $4088 to $4082 by writing a "2" over the final "8". The sum of $4082 and the extended bid prices for mobilization and painting amounted to Manta's total bid price of $301,749.

Relying on the mandatory language of Minn.Stat. § 16B.09, subd. 2 (1984):

> **Alterations and erasures.** A bid containing an alteration or erasure of any price contained in the bid which is used in determining the lowest responsible bid must be rejected unless the alteration or erasure is corrected pursuant to this subdivision. An alteration or erasure may be crossed out and the correction printed in ink or typewritten adjacent to it and initialed in ink by the person signing the bid.

and Specifications 1206 and 1301 of the State's *Standard Specifications for Highway Construction* (1978), the DOT rejected Manta's bid because of the improper alteration.

When the DOT awarded the contract to Rainbow, Inc., the next lowest bidder, Manta sued to enjoin the State from awarding the contract to any bidder except Manta and also sought a writ of mandamus compelling award of the contract to Manta. After Rainbow intervened, the district court granted Manta its requested injunctive relief but did not require the DOT to contract with Manta. The court of appeals affirmed the trial court's determination that rejection of the Manta bid was arbitrary and capricious, but held that the State could not be enjoined from awarding the bridge painting contract to any business or person but Manta. The court of appeals concluded that the State had no authority to contract with Rainbow, Inc., or to reject all bids "for the sole purpose of resoliciting bids," observing that rejection of all bids would be proper if the State abandoned the project or if there were some substantial reason for rejecting the Manta bid. *J.L. Manta, Inc. v. Braun*, 376 N.W.2d 466, 471 (Minn.App.1985).

## I.

Although the lower courts regarded the rejection of Manta's bid as arbitrary and capricious, it seems to us that there was indeed a substantial reason for its rejection: the DOT was simply following the statutory mandate. Certainly, the paramount purpose of the statutory bidding process is to protect the public interest by requiring contracts to be let to the lowest responsible bidder. *Foley Bros., Inc. v. Marshall*, 266 Minn. 259, 264, 123 N.W.2d 387, 391 (1963). Acknowledging that purpose of the competitive bidding requirement, the lower courts accepted Manta's contention that it had substantially complied with the statutory requirements and that a $6 alteration in a bid of more than $300,000 is *de minimus* and should not be a ground for rejection of the bid of a responsible bidder.

We have recognized that the public should not be denied the benefit of the lowest bid for every minor technical defect that does not affect the substance of the bid. Thus, we have held that insubstantial departures from the commissioner's requirements—defects which do not reflect bad faith, undermine the procedures, or prejudice the rights of those intended to be protected by the procedures—such as filing a certificate of non-collusion rather than an affidavit, *Foley Bros.*, 266 Minn. at 264, 123 N.W.2d at 391, or submitting a bid a short time after the time set by the specifications, *Nielsen v. City of St. Paul*, 252 Minn. 12, 88 N.W.2d 853 (1958), do not justify rejection of the bid. We have also

recognized that competitive bidding protects the public interest by depriving or limiting the discretion of contract-making officials in areas susceptible to such abuses as fraud, favoritism, improvidence, or extravagance. *Foley Bros.*, 266 Minn. at 264, 123 N.W.2d at 391. *See also Telephone Associates, Inc. v. St. Louis County Board*, 364 N.W.2d 378, 381 (Minn.1985).

With respect to the treatment of a bid containing an alteration or erasure of a bid price—an aspect of competitive bidding peculiarly susceptible to fraud and collusion—the legislature has deprived the officials who will let the contract of any discretion. Had it been within the DOT's discretion to accept a bid containing a non-complying alteration, then, of course, its refusal to accept Manta's bid would have been an arbitrary exercise of that discretion. A six dollar alteration in a bid of $301,749 is unquestionably *de minimus*. But section 16B.09, subd. 2, does not allow for the exercise of any discretion by the DOT. The statute specifically describes the only acceptable method of altering any price contained in the bid which is used in determining the lowest responsible bid. Unless the alteration or erasure is "crossed out and the correction printed in ink or typewritten adjacent to it and initialed in ink by the person signing the bid," the bid "must be rejected." Minn.Stat. § 16B.09, subd. 2. The statute, both clear and explicit, offers no basis for construction. Had the legislature intended either to make rejection or retention of a bid containing an altered price dependent upon the amount of the change or its relationship to the amount of the total bid price, or to accord public officials discretion to decide whether to accept or reject altered bids on a case by case basis, we have no doubt that section 16B.09, subd. 2, would have been couched in significantly different language.

Moreover, the absolute character of the legislative mandate that the bid *must* be rejected is responsive to the nature of the defect—a non-complying alteration has the potential for undermining or subverting the entire bidding procedure. Presumably, the legislature deemed it wise to protect the integrity of the bidding process with an absolute rule which would eliminate not only the opportunity for fraud and corruption, but also the confusion and suspicion bred by unauthorized bid changes or alterations by unidentified authors and the inevitable disputes over how much is *de minimus*. Ordinarily, such an absolute rule works reasonably well, but, as with any arbitrary bright line rule, there are instances—such as the one before us—where the rule produces a harsh result. The state's bid proposal form explicitly warns bidders, "[Y]ou must initial changes made in the Schedule of Prices...." Two of the specifications for highway construction direct the bidder's attention to the statutory requirement for rejection of bids containing non-complying alterations and detail the proper method of making corrections. Manta ignored or overlooked these warnings and the statute's absolute mandate. We cannot.[1] Accordingly, although there is neither allegation nor evidence of fraud or collusion, we hold that the DOT properly rejected the Manta bid because it contained non-complying, uninitialed alteration of the bid price for traffic control.

## II.

Having determined that rejection of the Manta bid was statutorily mandated, we must examine the court of appeals' conclusion that the DOT's acceptance of the Rainbow bid was equally arbitrary. After the bids were opened, DOT employees inserted unit prices for the mobilization and traffic control items, and corrected mathematical errors in the total bid amount or extension for the painting item and in Rainbow's total bid price. Manta contends that the insertion of unit prices for mobilization and traffic control converted an incomplete nonresponsive bid into a responsive bid. Al-

---

1. "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (1984).

though we agree that permitting public officials to insert an actual dollar amount in place of an incomplete nonresponsive answer in a bid proposal is not to be tolerated, *Telephone Associates, Inc. v. St. Louis County Board,* 364 N.W.2d at 382, the insertions in the Rainbow bid were superfluous: the Rainbow bid was complete and responsive without the figures added by the DOT. In the column on the bid form entitled "Item description and unit of measure" the unit of measure accompanying the mobilization and traffic items is "lump sum," a term which suggests that entry of a lump sum amount in the amount or extension column is sufficient without any necessity for entry of a unit price. The amount of Rainbow's bid price for each of the two lump sum items was perfectly obvious and unaltered when the bid was opened, and the DOT's insertions of unit prices identical to the lump sum amounts added nothing.

In addition, the DOT altered the total bid amount for the painting item and made a corresponding change in Rainbow's total bid price. Rainbow's bid for the painting item was for a quantity of 281,100 square feet at a unit price of $1.15. The extended amount, $323,150, was mathematically incorrect. The DOT corrected the bid price for the painting item by crossing out Rainbow's figure and entering the correct product of 281,100 and $1.15, $323,265. The total bid price was then altered to reflect the correct sum of the bid price for the three items included in the bid.

■ These mathematical corrections are expressly contemplated by Minnesota Department of Transportation, *Standard Specifications for Highway Construction* (1978), which set out requirements, cove-

nants, and specifications applicable to and controlling highway construction contracts. Minn.Stat. § 161.32 (1984). Specifications 1206 and 1301 provide that the unit bid price governs if there is a discrepancy and that bids are to be compared on the basis of the correct summation of the products of the scheduled quantities and unit bid prices.[2] Thus, the DOT had both the authority and the duty to review the bids for mathematical accuracy and to correct the multiplication error and resultant error in addition. Therefore, we conclude that the DOT has authority to award the contract to Rainbow, Inc.

### III.

■ Nevertheless, although the DOT has the option of accepting the Rainbow bid as the lowest remaining responsible bid, it is not precluded from rejecting all bids and readvertising the contract in the event it should elect to do so. *Electronics Unlimited, Inc. v. Village of Burnsville,* 289 Minn. 118, 182 N.W.2d 679 (1971). Specification 1301 expressly reserves the right "to reject any or all proposals." Even in the absence of a constitutional or legislative reservation, courts have generally recognized the right to reject all bids where, as here, the invitation to bid expressly reserved the right of rejection. Annot., 31 A.L.R.2d 469, 475–80.

At the time the bridge painting project was bid, Minn.Stat. § 16B.09, subd. 2 (1984) provided, "Any bid may be rejected." Because Minn.Stat. § 16.08 (1982), the predecessor of section 16B.09, subd. 2, had permitted the rejection of "any or all bids," the court of appeals regarded the deletion of the words "or all" as evidence of a

---

2. While none of the parties to this litigation question the validity of the specifications, we note that the commissioner of transportation has authority over all aspects of the trunk highway system in Minnesota, including repair and improvements and the contracting therefor by bid, *see* Minn.Stat. §§ 161.20 and .32 (1984), and that such authority is expressly taken out of the general authority of the commissioner of administration over state contracts. Minn.Stat. § 16B.13 (1984). We also note that section

16B.09, which imposes the duty to award a contract to the lowest responsible bidder states:

All state contracts and purchases made by or under the supervision of the commissioner *or an agency for which competitive bids are required* must be awarded to the lowest responsible bidder, *taking into consideration conformity with the specifications,* terms of delivery, and *other conditions imposed in the call for bids.*

(Emphasis added).

legislative intention to deprive the State of authority to reject all bids as a group for the purpose of resoliciting new bids. 376 N.W.2d at 470–71. Although a change in the language of the statute is usually presumed to effect a change in meaning, *International Union of Electrical and Machine Workers of America, Local No. 1140 v. Portec, Inc.*, 303 Minn. 341, 344, 228 N.W.2d 239, 242 (1975), the Act of April 25, 1984, ch. 544, 1984 Minn.Laws 859, was merely a recodification of the laws governing the department of administration. That the deletion of obsolete and redundant language was not intended to narrow the State's right to reject bids is confirmed by the reinstatement of the phrase "any or all bids may be rejected" by Act of March 19, 1986, ch. 363, § 4, 1986 Minn.Laws 165.

Moreover, we have previously recognized that an express reservation in the specifications, buttressed in this case by the statutory reservation, is sufficient authorization for the State's rejection of all bids even after the commencement of litigation and issuance of an injunction against the initial award of the contract. *Electronics Unlimited, Inc. v. Village of Burnsville*, 289 Minn. 118, 182 N.W.2d 679, 684 (1971). Of course, the right to reject all bids is not unlimited. By its own rules the State recognizes the necessity for cause. Minn. Rules § 1230.0700, subp. 3. While there has not yet been a rejection of all bids for the bridge painting contract, the DOT has the right to reject all bids if the state's present financial status requires postponing or redesigning the project or there is other sufficient cause for rejection of all bids.

Reversed.

YETKA and KELLEY, JJ., dissent.

YETKA, Justice (dissenting).

I would affirm the holding of the trial court and the court of appeals that the state was arbitrary in its treatment of the bids and further hold that if the state proceeds with this contract, it must award the bid to J.L. Manta, Inc., as the lowest responsible bidder.

The legislature has made clear that it intends that all state contracts be awarded to the lowest responsible bidder. Minn. Stat. § 16B.09, subd. 1 (1984) provides:

All state contracts and purchases made by or under the supervision of the commissioner or an agency for which competitive bids are required must be awarded to the lowest responsible bidder, taking into consideration conformity with the specifications, terms of delivery, and other conditions imposed in the call for bids. The commissioner may decide which is the lowest responsible bidder for all purchases. As to contracts other than for purchases, the head of the interested agency shall make the decision, subject to the approval of the commissioner. Any bid may be rejected. In a case where competitive bids are required and where all bids are rejected, new bids, if solicited, must be called for as in the first instance, unless otherwise provided by law.

Section 16B.04 of that same chapter vests rulemaking authority in the commissioner of administration. We have determined that minor variations in form will not invalidate the bid. *See Otter Tail Power Co. v. MacKichan*, 270 Minn. 262, 133 N.W.2d 511 (1965); *Foley Bros., Inc. v. Marshall*, 266 Minn. 259, 123 N.W.2d 387 (1963).

With the basic legislative intent in mind, the facts of this case bear repeating. In the road construction contract in question, one of the items to be bid was traffic control. Manta apparently intended to bid $4,082 for the work, but, under the column marked "Unit Price," had typed in the figure $4,088. It appeared that a "2" was then handwritten over the last "8," making the bid for traffic control $4,082, but the change was not initialed. Manta's overall bid was $301,749, which correctly took into consideration $4,082 for traffic control; nevertheless, the state refused to award the contract to Manta because it did not initial the $6 change. The state admitted at oral argument that Manta was the lowest bidder and does not dispute Manta's claims that it is a responsible bidder. It

simply argues that the Manta bid must be rejected due to Minn.Stat. § 16B.09, subd. 2 (1984), which provides:

> A bid containing an alteration or erasure of any price contained in the bid which is used in determining the lowest responsible bid must be rejected unless the alteration or erasure is corrected pursuant to this subdivision. An alteration or erasure may be crossed out and the correction printed in ink or typewritten adjacent to it and initialed in ink by the person signing the bid.

The next lowest bidder was Rainbow. Here, the state *itself* altered Rainbow's bid by correcting its total so that the unit price bid for painting and the estimated square footage would be correct. The state justifies making these changes because it found that Rainbow's unit price bid, when multiplied by the quantity required did not total Rainbow's final bid. The state claims that its authority for making the change is the Department of Transportation's *Standard Specifications for Highway Construction* Rule 13.01, which provides: "In case of a discrepancy between a unit bid price and the extension, the unit bid price shall govern."

I believe that to uphold this procedure is to circumvent the legislature's fundamental intent concerning fairness in bidding for public contracts.

First, the change made by Manta in its bid is clearly a minor variation. The uninitialed change did not affect the overall bid. The statute indicates that a bid containing an alteration or erasure of any price which is *used in determining the lowest responsible bid* must be rejected. Here, the overall original bid was not changed or altered in anyway. The unit price change of $6 was de minimus and did not affect the overall bid.

Second, the authority of the transportation department itself to alter a bid is questionable, especially if it so stringently prohibits the bidders from making minor alterations. I find no direct authority in the statute for the state to change bids; thus, if a bidder cannot alter a bid without initialing the same, the state should be bound by the same rules. The *Standard Specifications* do not directly cite their authority, and there is no statute giving clear rulemaking authority to the commissioner of transportation. Under Minn.Stat. § 174.03, subd. 4(a) (1984), the commissioner is authorized to "construct and maintain transportation facilities authorized by law." Explicit rulemaking authority for public bidding procedures is vested, however, in the commissioner of the Department of Administration. Minn.Stat. § 16B.04, subd. 1 (1984). Not to hold the state responsible under the same guide of conduct could mean that if a state official opening the bids favored a particular contractor, he could alter his overall bid by multiplying out the unit prices or, worse yet, insert unit prices that are missing. This could increase or decrease the overall bid and, therefore, change the final figure that the contractor intended as its overall bid. Although unlikely, such a scenario could occur. I would thus hold that Rule 13.01 of the transportation department's *Standard Specifications* is invalid as not being a properly promulgated rule and not being authorized or pursuant to the bidding statutes.

Finally, after opening the bids, if the state wants to reject all bids, I agree with the majority opinion that it should be able to do so. However, it must have a clearly articulated reason for rejecting all bids, for if the department wanted to thwart the statute and favor a particular bidder, it could continue to call for and reject all bids until its favorite finally got the contract. The public interest is not served by such conduct. Rejection should occur only where the state can indicate an objective reason for rejecting all bids. Thus, in this case, since it did not have an objective reason, or at least did not indicate a reason for rejecting all bids, it should be required to award the bid to the lowest responsible bidder, namely, Manta.

KELLEY, Justice (dissenting).

I join the dissent of Justice Yetka.